**Opinion issued August 30, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NOS. 01-15-00102-CR, 01-15-00103-CR, 01-15-00104-CR

———————————

**BRODRICK MICHAEL JAMES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case Nos. 74207, 74208, 74209**

---

### O P I N I O N

Appellant Brodrick Michael James pleaded guilty to three felony indictments for delivery of a controlled substance.[1] After a nonjury trial on punishment, the court sentenced James to 45 years in prison on each count, to run concurrently.

---

[1]     TEX. HEALTH & SAFETY CODE § 481.112(d).

James appealed. He asserts that the trial court erred by refusing his request, on the day of trial, for additional time to allow him to retain a new attorney. He also contends that the court erred by admitting into evidence an audio recording of an inadvertent "pocket-dialed" phone call placed to an undercover investigator. Finally, he argues that his counsel rendered ineffective assistance by failing to assert that the recording of the "pocket-dialed" phone call was illegal under the Fourth Amendment and the Texas wiretap statute.

We affirm.

## Background

On three separate occasions, appellant Brodrick Michael James sold methamphetamine to Officer M. Salinas, an undercover investigator working with the narcotics task force of the Brazoria County Sheriff's Office. Salinas recorded phone calls from James regarding sales of controlled substances, and these recordings were admitted into evidence at trial without objection.

Salinas subsequently met James to discuss a potential cocaine sale. Another undercover officer showed James that he had cocaine. James offered to buy two kilograms of cocaine, and he called Salinas later that day to confirm the buy. Shortly thereafter, Salinas received another phone call when James inadvertently pocket-

dialed him from a Subway sandwich shop, where he was visiting with a female friend and her children.[2]

Salinas recorded both phone calls. When he received the second call, he recognized James's phone number and voice. Salinas also heard a female voice. James told the woman that he planned to take the cocaine at gunpoint and kill Salinas. The woman urged James not to kill Salinas. Upon hearing this recorded conversation, the narcotics task force ended its interaction with James and immediately arrested him.

James was charged with possession of methamphetamine with intent to distribute, in three separate indictments corresponding to three separate sales he made to Salinas. Because he was indigent, counsel was appointed to represent him. However, on the day of trial, he informed the court and his appointed counsel that

---

[2]     To "pocket-dial" is to "inadvertently call (someone) on a mobile phone in one's pocket, as a result of pressure being accidentally applied to a button or buttons on the phone." OXFORD DICTIONARIES, http://www.oxforddictionaries.com/us/definition/american_english/pocket-dial?q=pocket+dial (last visited Aug. 24, 2016, copy in case file); *see also* *Huff v. Spaw*, 794 F.3d 543, 556 (6th Cir. 2015) ("The term 'pocket-dial' refers to the accidental placement of a phone call when a person's cellphone 'bump[s] against other objects in a purse, briefcase, or pocket.'"). In his testimony, Officer Salinas actually used a cruder (though perhaps more ubiquitous) version of the colloquialism, referring to this incident as a "butt dial." *See* OXFORD DICTIONARIES, http://www.oxforddictionaries.com/us/definition/american_english/butt-dial?q=butt+dial (last visited Aug. 24, 2016, copy in case file) (defining a "butt dial" as "An inadvertent call made on a mobile phone in one's rear pants pocket, as a result of pressure being accidentally applied to a button or buttons on the phone").

3

his family had acquired some money and that he wanted to hire an attorney. He said that his family was meeting with an attorney that same day, and that he knew "for sure that they're going to hire him." He asked for "a little bit of time" to engage an attorney because he did not "feel comfortable going to trial with the court-appointed lawyer." The judge stated that his appointed counsel was "a good lawyer" who "does a good job," and the request was denied.

The court later held a hearing on punishment, and in addition to recordings of phone calls relating to each of the three methamphetamine transactions, the State offered into evidence the audio recording of the pocket-dialed call in which James spoke of robbing and killing Salinas. Defense counsel objected to the admission of the pocket-dialed recording, but the trial court overruled the objections and admitted the recording.

The court assessed punishment at 45 years in prison for each offense, and James appealed.

**Analysis**

On appeal, James argues that the trial court erred by denying his right to counsel of his choosing. He challenges the admission of the recording of the pocket-dialed phone call. Finally, James argues that he received ineffective assistance of

counsel during the punishment hearing because his attorney did not make the proper objections to the admission of the audio recording.[3]

## I. Denial of continuance to retain and substitute defendant's choice of counsel

James argues that the trial court violated his Sixth Amendment right to be represented by counsel of his choosing. On the day of trial, James told the court that he did not "feel comfortable" going to trial with the court-appointed attorney, but he did not explain why. The trial setting had been scheduled over three months earlier, and James had been waiting in jail for "going on six months." He told the trial judge that his family "recently" had acquired "a substantial amount of money" enabling them to retain an attorney, and that they would be meeting with an attorney that very day. James said, "I know for sure that they're going to hire him," and he asked for "a little bit of time" to engage the new lawyer.

"The right to counsel of one's choice is not absolute, and may under some circumstances be forced to bow to 'the general interest in the prompt and efficient administration of justice.'" *Rosales v. State*, 841 S.W.2d 368, 374 (Tex. Crim. App. 1992) (quoting *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978)). For

---

[3] In an additional issue, James challenged the certification of his right to appeal. The State agreed that the certification was defective, and the trial court has since corrected it. *See* TEX. R. APP. P. 25.2, 34.5(c), 37.1; *Dears v. State*, 154 S.W.3d 610, 613 (Tex. Crim. App. 2005).

example, "an accused may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel." *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). The denial of a continuance resulting in an appellant claiming a deprivation of his counsel of choice is reviewed for abuse of discretion. *See Rosales*, 841 S.W.2d at 374.

Despite conceding in his brief that "a defendant in a criminal case may not switch counsel at the last minute or do anything to manipulate or delay the trial through his choice of counsel," he nevertheless asserts that his request for a "little bit of time" to hire a new attorney was "unreasonably and arbitrarily denied." His brief does not discuss the nonexclusive factors outlined by the Court of Criminal Appeals to inform a decision whether to grant a continuance due to the absence of counsel of defendant's choice:

> (1) the length of delay requested; (2) whether other continuances were requested and whether they were denied or granted; (3) the length of time in which the accused's counsel had to prepare for trial; (4) whether another competent attorney was prepared to try the case; (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court; (6) whether the delay is for legitimate or contrived reasons; (7) whether the case was complex or simple; (8) whether the denial of the motion resulted in some identifiable harm to the defendant; and (9) the quality of legal representation actually provided.

*Id.* (quoting *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982) (en banc)).

Considering these factors as applied to this case, we observe that: (1) James did not specify the length of delay he sought, which he characterized as a "little bit of time" to retain new counsel; (2) no prior motions for continuance had been filed; (3) appointed counsel had represented James for approximately four months; (4) no other attorney had been engaged or was prepared to try the case, and James waited until the day of trial to attempt to replace his appointed counsel; (5) the trial setting had been in place for over three months and appointed counsel and the State were ready for trial, but the record is otherwise silent as to the balance of convenience to the witnesses, counsel, and the trial court; (6) the stated reason for the delay in seeking to retain counsel was that James's family had recently acquired funds to hire an attorney, but there was no specific objection to James's lawyer who was ready to try the case; (7) although the charges were serious, the case was not particularly complex; (8) the record does not show that the court's denial of the request for "a little time" resulted in any identifiable harm to James; and (9) despite James's allegation of ineffective assistance of counsel, addressed below, his appointed attorney had adequate time to prepare for trial, locate and present witnesses, and cross-examine the State's witnesses on his behalf.

Some of these factors weigh in favor of granting the requested continuance, such as the fact that there had been no prior delays. However, the record supports the conclusion, implied from the trial court's ruling denying the continuance, that

7

most of the factors favored that determination, particularly the timing of the request (morning of trial) and the absence of specific complaints about the appointed lawyer (who was prepared to try the case that day) or specific reasons for substituting a new lawyer (who had not yet been retained). Accordingly, we conclude that the court acted within its discretion to deny the request for "a little time" to retain a new lawyer, which was made on the day of trial, and we overrule this issue. *See id.*; *see also Webb*, 533 S.W.2d at 784.

## II.    Admission of pocket-dialed phone call into evidence

James argues that the trial court erred by admitting into evidence the audio recording of the pocket-dialed phone call to Officer Salinas. After the undercover agents "flashed" a kilogram of cocaine in a meeting with James, he agreed to buy two kilos. Salinas testified that afterwards he recorded a phone call in which James confirmed the transaction. After James "hung up the phone," he "called back" while Salinas's recorder was still running. Salinas testified without objection that when he listened to the recording, he heard James "talking about meeting back up, as far as purchasing the kilograms, but said he was going to rip us off and pull out his gun and . . . when he draws down on me, then it was going to be time to kill." Salinas testified that to "draw down" means to "pull a gun on somebody." He further testified that he heard a female voice respond, saying "is it really worth my life killing somebody else. 'My life' meaning me, my life."

The State then offered the recording into evidence. Defense counsel objected to the recording on the grounds that the State had failed to lay a proper predicate because the witness had "no personal knowledge," and that the probative value of the evidence was outweighed by its prejudicial effect. Counsel also likened the interception of the phone call to eavesdropping on a private conversation.

On appeal, James argues that the audio recording of his conversation was obtained in violation of the Fourth Amendment and the Texas wiretapping statute, Penal Code section 16.02. However, at the time the recording was offered into evidence, Salinas already had testified without objection that James could be heard on the audio recording planning to rob and kill the undercover narcotics officers. To preserve error, a defendant must make a timely objection in the trial court, and to the extent the substance of the challenged evidence already had been admitted without objection, James's objections were waived. *See, e.g.*, TEX. R. APP. P. 33.1; *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

Moreover, to preserve error for appellate review, the issue on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Even constitutional errors may be waived if a party fails to properly object at trial. *Id.* When "the correct ground for an objection is obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection." *Id.* (citing *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App.

1977)). Rather, to avoid waiver of an appellate issue, a party must let the trial judge know what he wants and why he thinks he is entitled to it, and he must do so clearly enough for the judge to understand him at a time when the judge can do something about it. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). "In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time." *Clark*, 365 S.W.3d at 339 (citing *Lankston v. State*, 827 S.W.2d 907, 911 (Tex. Crim. App. 1982) (en banc)).

When defense counsel objected at trial, she specifically stated: "We would object to State's Exhibit No. 9. One, on predicate, that he has no personal knowledge." This objection has been abandoned on appeal. Trial counsel then stated: "This was, by [Salinas's] own admission, an accidental phone call that was intercepted, similar to someone eavesdropping on a private conversation." The objection at trial mentioned nothing about the wiretapping statute or the Fourth Amendment. The record does not demonstrate that it was "obvious to the judge and opposing counsel" that counsel's analogy to "eavesdropping" was intended to suggest a legal objection based on the wiretapping statute, which was never mentioned. The Fourth Amendment was never mentioned, either directly or indirectly. Accordingly, we conclude that this issue is waived because the objections

10

made at trial were not timely made and do not comport with the arguments on appeal. *See* TEX. R. APP. P. 33.1(a)(1); *Clark*, 365 S.W.3d at 339.

## III. Ineffective assistance of counsel

In his final issue, James argues that he received ineffective assistance of counsel because his trial counsel failed to object to the admission of the audio recording of the pocket-dialed phone call, on the basis that it violated the Fourth Amendment and the Texas wiretap statute.

Claims that a defendant received ineffective assistance of counsel are governed by the standard announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Strickland* mandates a two-part test: (1) whether the attorney's performance was deficient, i.e., whether counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and if so, (2) whether that deficient performance prejudiced the party's defense. 466 U.S. at 687, 104 S. Ct. at 2064. "The defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats an ineffectiveness claim." *Shamim v. State*, 443 S.W.3d 316, 321 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011)). The adequacy of attorney performance is judged against what is reasonable considering prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. There is a strong

presumption that, considering the circumstances, a lawyer's choices were reasonably professional and motivated by sound trial strategy. *Id*. at 689, 104 S. Ct. at 2065; *Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013). In the face of this presumption, a criminal defendant has the burden of showing by a preponderance of the evidence that his attorney failed to provide constitutionally adequate representation. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

"When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible." *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002). Article 38.23 of the Code of Criminal Procedure prohibits the use at trial of evidence obtained in contravention of state or federal law, the U.S. Constitution, or the Texas Constitution. TEX. CODE CRIM. PROC. art. 38.23(a). Thus, if the audio recording was obtained in violation of the Constitution or a statute, then it would be inadmissible. However, if the audio recording was admissible, then the first prong of *Strickland* would not be satisfied.

We look to "the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Viewing the totality of the representation in this case provides particularly important context to the ineffective assistance claim. In the course of presenting evidence of the three drug transactions that were the basis

12

of the charges, Officer Salinas testified that he recorded telephone calls with James "as part of the investigation." For each of those three transactions, the State offered into evidence recordings of telephone conversations between Salinas and James. In each instance, defense counsel made no objection to the evidence. All of these recordings were entered into evidence before the State offered to admit the recording of the pocket-dialed call.

The unlawful interception of an oral communication is prohibited by Penal Code section 16.02(b). However, it is an affirmative defense to prosecution under that provision that "a person acting under color of law intercepts . . . a wire, oral, or electronic communication, if the person is acting under the authority of Article 18.20, Code of Criminal Procedure." TEX. PENAL CODE § 16.02(c)(3)(B). Article 18.20 authorizes a judge to "issue an order authorizing interception of wire, oral, or electronic communications only if the prosecutor applying for the order shows probable cause to believe that the interception will provide evidence of the commission of" certain offenses, such as certain felonies under Health and Safety Code Chapter 481, including those committed by James. TEX. CODE CRIM. PROC. art. 18.20, § 4(2)(A).

"An ineffective-assistance claim must be firmly founded in the record and the record must affirmatively demonstrate the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). In this case, James

13

does not contend, and the record does not establish, that in the course of the investigation, neither Salinas nor any other member of the narcotics task force obtained an order authorizing the recording of phone conversations with James as evidence of the drug sales made to undercover police officers.

The record is also silent as to trial counsel's reasons for failing to make a Fourth Amendment or wiretapping objection. If it were the case that the police actually had complied with the procedural rules for obtaining authorization to record phone conversations with James, and defense counsel knew that, it would explain why counsel did not object to the recording of the pocket-dialed call, or any of the other recordings, as illegally intercepted oral communications.

With respect to a Fourth Amendment objection, the pocket-dialed call is different from the other recorded calls to the extent it was inadvertent, as opposed to an intentional phone communication. James argues that the Fourth Amendment safeguards an individual's legitimate privacy expectation from "unreasonable governmental intrusions,"[4] and from that premise he reasons that evidence "obtained by governmental intrusion" can be challenged if a defendant "had a legitimate expectation of privacy in the place invaded."[5] He contends he had a reasonable

---

[4]     *E.g.*, *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993).

[5]     *See Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 430 (1978); *see also Kyllo v. United States*, 533 U.S. 27, 33, 121 S. Ct. 2038, 2042 (2001) (even in

expectation of privacy "in a private conversation with another individual without governmental eavesdropping and recording of that conversation."

James does not present any legal argument, however, to support his assumed premise that the challenged evidence in this case resulted from an unreasonable governmental "intrusion" prohibited by the Fourth Amendment, instead relying solely on the contention that he had a reasonable expectation of privacy in his conversation. Yet the record is undeveloped with respect to the reasonableness of his privacy expectations[6] and whether the circumstances permitted the officer to

---

the absence of a trespass, "a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable"). James presents no argument that he was subjected to an unconstitutional physical intrusion. *See, e.g.*, *Silverman v. United States*, 365 U.S. 505, 510, 81 S. Ct. 679, 682 (1961) (distinguishing permissible police eavesdropping which "had not been accomplished by means of an unauthorized physical encroachment within a constitutionally protected area," with impermissible warrantless physical intrusion of a "spike mike" that made physical contact with a heating duct serving a house under police investigation).

[6]    *Cf. Huff*, 794 F.3d at 551 (observing that "a person exposes his activities and statements, thereby failing to exhibit an expectation of privacy, if he inadvertently shares his activities and statements through neglectful use of a common telecommunication device," noting that the pocket-dialer admitted his awareness of the risk of inadvertent pocket-dialed calls). As Justice Alito recently observed, this is not a simple or static analysis:

Dramatic technological change may lead to periods in which popular expectations are in flux and may ultimately produce significant changes in popular attitudes. New technology may provide increased convenience or security at the expense of

listen to or record the exposed conversation without offending the Fourth Amendment.[7]

In the face of a sparse record and thin legal analysis supporting the allegation of ineffective assistance, we observe that the record does show that the recorded conversation was not exposed by any intrusive investigative police tactics, but instead by operation of an electronic device under James's own control. Officer Salinas was investigating James's criminal drug activity. The two had just finished a telephone conversation about a proposed sale of cocaine, when Salinas received an incoming telephone call that he testified he recognized as coming from James, the suspect under investigation. At the moment he answered, Salinas had no way of knowing that it was not an intentional call following up on the planned drug sale, as

---

> privacy, and many people may find the tradeoff worthwhile. And even if the public does not welcome the diminution of privacy that new technology entails, they may eventually reconcile themselves to this development as inevitable.

*United States v. Jones*, 132 S. Ct. 945, 962 (2012) (Alito, J., concurring); *see also* Note, 129 HARV. L. REV. 1436, 1440 (2016) (observing that the Supreme Court recently "found longstanding precedent inapplicable given the personal privacy interests implicated by and the sheer ubiquity of the modern cell phone") (citing *Riley v. California*, 134 S. Ct. 2473, 2484–85 (2014)).

[7] *Cf. Katz v. United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 516 (1967) (Harlan, J., concurring) ("conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable").

opposed to an unintentional "pocket dial." James does not suggest that the Fourth Amendment prohibited Salinas from answering his phone, and he presents no legal analysis to establish why the Fourth Amendment would require the officer to terminate the phone call upon the realization that a suspect might be exposing, carelessly but unintentionally, evidence of his criminal plan.

Limitations of the record often render a direct appeal inadequate to raise a claim of ineffective assistance of counsel. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Often, "the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Ordinarily, trial counsel should be "afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). We conclude that the record in this case does not affirmatively demonstrate the meritorious nature of the ineffective-assistance claims. *See Menefield*, 363 S.W.3d at 592. Accordingly, we overrule James's final issue on appeal.

**Conclusion**

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Chief Justice Radack, Justice Massengale, and Justice Brown.

Publish. TEX. R. APP. P. 47.2(b).