

## NUMBER 13-22-00095-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

FELIX DANIEL PALACIOS A/K/A
FELIX PALACIOS,                                                    Appellant,

v.

THE STATE OF TEXAS,                                            Appellee.

On appeal from the 36th District Court
of Aransas County, Texas.

## MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña**
**Memorandum Opinion by Justice Silva**

Appellant Felix Daniel Palacios a/k/a Felix Palacios appeals his conviction of burglary of a habitation, a second-degree felony enhanced to a first-degree felony by his repeat felony offender status. *See* TEX. PENAL CODE ANN. §§ 12.42(b), 30.02(c)(2). Appellant was sentenced to twelve years' incarceration in the Texas Department of

Criminal Justice, Institutional Division. By three issues which we reorganize below, appellant argues (1) the trial court abused its discretion in denying his motion for continuance predicated on his request to "select the counsel of his choice in violation of the Sixth Amendment to the United States Constitution, Article I § 10 of the Texas Constitution, and Texas Code of Criminal Procedure Article 1.05"; (2) the evidence is insufficient to support his conviction; and (3) appellant received ineffective assistance of counsel. We affirm as modified.

## I. BACKGROUND

A grand jury returned an indictment alleging that appellant "intentionally and knowingly enter[ed] a habitation, without the effective consent of Kimberly Martin[,] the owner thereof, and attempted to commit or committed theft of property, namely, a flounder gig, owned by Kimberly." *See id.* § 30.02(a)(3). Appellant pleaded not guilty and proceeded to trial, during which the following evidence was adduced.

On October 23, 2020, Kimberly was in her bedroom when she was startled by the sound of breaking glass and initially attributed the noise to her adult daughter, Cheyenne. As Kimberly made her way toward the living room, she heard shuffling sounds coming from an empty bedroom down the hall. Moments later, Kimberly was face-to-face with a shirtless, "very sweaty," and shaky man, later identified as appellant. Appellant was holding Kimberly's flounder gig. Kimberly explained that a flounder gig is an approximately 6-foot-long stick with a sharp pitchfork tip. On cross-examination, Kimberly stated that following a confrontation, appellant claimed the neighbors needed emergency assistance and asked her to call 9-1-1.

2

Cheyenne testified that she, like her mother, heard the sound of glass "crashing." When Cheyenne exited her bedroom, she encountered appellant pacing with the flounder gig approximately ten feet away from her crying mother. Cheyenne described appellant as "panicky and paranoid" and "dripping blood." Cheyenne testified that her then-boyfriend convinced appellant to exit the home and wait outside until police arrived.

Sergeants Jeremy Gates and Tony Davila with the Aransas Pass Police Department located appellant outside the Martin residence, still bleeding and still possessing the flounder gig. Sergeant Gates testified that prior to his arrival, he had received reports that a subject matching appellant's description was seen jumping the gated fence at the entry of the Martin property. According to Sergeant Gates, appellant also appeared to be sweating profusely and fidgeting as if under the influence. Sergeant Gates' body camera footage was admitted into evidence at trial, and appellant can be heard telling Sergeant Gates he "felt like [he] was chasing something." When prompted for specifics, appellant stated he had been chasing "grass" and motioned to the grass on the ground. Appellant later confessed to breaking the window to enter the property and to having previously ingested "a lot" of methamphetamine.

A jury returned a guilty verdict, and this appeal followed.

## II.    SUFFICIENCY

By his second issue which we address first, appellant argues there was "insufficient evidence that [he] intended to commit theft of the flounder gig" because appellant maintains he did not leave the complaining witness's property with the flounder

3

gig; he instructed the family to call the police; and he never verbally expressed an intention to steal the flounder gig.

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge even where the case is presented before a trial court. *See Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v.*

4

*State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Walker*, 594 S.W.3d at 336.

Under a hypothetically correct jury charge in this case, the State was required to prove beyond a reasonable doubt that (1) appellant, without the effective consent of Kimberly, (2) entered her habitation, and (3) committed or attempted to commit theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). "By its nature, a culpable mental state must generally be inferred from the circumstances." *Nisbett*, 552 S.W.3d at 267; *Duntsch v. State*, 568 S.W.3d 193, 216 (Tex. App.—Dallas 2018, pet. ref'd) ("Proof of mental state will almost always depend upon circumstantial evidence.").

Although appellant maintains he never admitted to entering the Martin residence with the intention to commit theft and denies leaving the premises with the stolen flounder gig, the factfinder was privy to evidence of a broken window, appellant's acquiesced forced entry through said window, appellant's implausible explanations for entry, and the officers' observance of appellant outside the residence with the flounder gig still in hand. *See Gear v. State*, 340 S.W.3d 743, 747–48 & n.9 (Tex. Crim. App. 2011); *Reyes v. State*, 422 S.W.3d 18, 24 (Tex. App.—Waco 2013, pet. ref'd) ("The falsity or unreasonableness of an explanation may be shown by circumstantial evidence."); *see also Veliz v. State*, No. 13-16-00114-CR, 2017 WL 2200316, at *2 (Tex. App.—Corpus Christi–Edinburg Mar.

5

16, 2017, pet. ref'd) (mem. op., not designated for publication) ("The element of entry can be established by inference, just like the elements of any other offense."). We defer to the jury's interpretation of this evidence. *See Brooks*, 323 S.W.3d at 899; *see also Meekins v. State*, 340 S.W.3d 454, 461 n.32 (Tex. Crim. App. 2011) ("Determinations of witness credibility are left entirely to the fact[]finder, who is in the unique position to observe the witness' body language, demeanor, tone of voice, and other indicia of credibility.").

After considering the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that appellant entered Kimberly's home without her consent and committed or attempted to commit theft. *See Walker*, 594 S.W.3d at 335; *see also* TEX. PENAL CODE ANN. § 30.02(a)(3). Because the evidence is legally sufficient to support a burglary of a habitation conviction, we overrule this issue.

### III.    RIGHT TO COUNSEL

Appellant next argues that the trial court abused its discretion in denying his motion for continuance predicated on his dissatisfaction with appointed counsel, which appellant raised orally on the morning of trial. Appellant argues the trial court's denial amounted to a violation of his State and federal rights to be represented by counsel of his choice.

"The Federal and Texas Constitutions, as well as Texas statute, guarantee a defendant in a criminal proceeding the right to have assistance of counsel." *Gonzalez v. State*, 117 S.W.3d 831, 836 (Tex. Crim. App. 2003); *see* U.S. CONST. amends. VI, XIV. However, such right is not absolute. *Gonzalez*, 117 S.W.3d at 837; *see King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) (per curiam) ("A trial court has no duty to search for counsel agreeable to the defendant."). A defendant's right to counsel of choice "may

be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice." *Gonzalez*, 117 S.W.3d at 837; *see United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (noting the trial court's "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar"); *see also Smith v. State*, No. 13-11-00694-CR, 2016 WL 7242846, at *1 (Tex. App.—Corpus Christi–Edinburg Dec. 15, 2016, no pet.) (mem. op., not designated for publication) ("[T]he right to counsel may not be manipulated so as to obstruct the judicial process or interfere with the administration of justice." (quoting *King*, 29 S.W.3d at 566)). Moreover, the decision to permit the withdrawal of appointed counsel and subsequently appoint substitute counsel rests within the sound discretion of the trial court. *See* TEX. CODE CRIM. PROC. ANN. arts. 1.051(d), 26.04(j)(2) ("An attorney appointed under this article shall . . . represent the defendant until . . . appeals are exhausted, or the attorney is permitted or ordered by the court to withdraw as counsel for the defendant after a finding of good cause is entered on the record[.]").

Although appellant did not file a motion for continuance and the trial court did not rule on appellant's oral motion, we resolve appellant's first point of error using nonexclusive factors the court of criminal appeals set forth. *See Ex parte Windham*, 634 S.W.2d 718 (Tex. Crim. App. 1982); *James v. State*, 506 S.W.3d 560, 565 (Tex. App.— Houston [1st Dist.] 2016, no pet.) (applying the *Windham* factors where the appellant orally raised a motion for continuance based on his dissatisfaction of appointed counsel); *Brooks v. State*, 771 S.W.2d 712, 714 (Tex. App.—Corpus Christi–Edinburg 1989, pet. ref'd) (same). That is to say, we review the trial court's decision for an abuse of discretion

and weigh the following factors: (1) the length of the delay requested; (2) whether other continuances had been previously requested; (3) the length of time which appellant's trial counsel had to prepare for trial; (4) whether another attorney was prepared to try the case; (5) the balanced inconvenience to the witnesses, the opposing counsel, and the trial court; (6) whether the delay was for legitimate or contrived reasons; (7) whether the case was complex or simple; (8) whether a denial of the motion resulted in some identifiable harm to the appellant; and (9) the quality of legal representation provided. *Windham*, 634 S.W.2d at 720.

Applying the *Windham* factors to this case, we observe that (1) the stated reason for the continuance was appellant's dissatisfaction with appointed counsel[1] and desire to retain new counsel; (2) one month prior to trial, appellant informed the trial court during a pretrial hearing of his family's efforts to retain counsel; however, in raising his request for continuance, appellant did not specify the length of delay he sought to retain new counsel; (3) no prior motions for continuance had been filed in appellant's case; (4) appointed counsel had represented appellant for approximately one year and had announced ready for trial; (5) no other attorney was prepared to try the case; (6) the State announced ready for trial one month prior to trial and again on the morning of trial; further, appellant's case necessitated a priority trial setting because appellant was in custody, and the trial court informed the parties that appellant was the only inmate awaiting trial; (7) although the charge was serious, the case was not complex; (8) despite appellant's allegation of

---

[1] Specifically, appellant informed the trial court that he did not believe trial counsel had reviewed the evidence in the case; he had been unable to "speak with [his] attorney properly" or discuss his counsel's defense strategy prior to trial; and he "really d[id]'t feel comfortable going [forward] with her."

8

ineffective assistance of counsel, addressed below, the record does not show that the court's denial of the request resulted in any identifiable harm to appellant; and (9) appellant's appointed attorney had adequate time to prepare for trial and cross-examine the State's witnesses on his behalf.

The trial court implicitly found that appellant's right to counsel of his own choosing was outweighed by the court's need for the prompt and efficient administration of justice. *See Gonzalez*, 117 S.W.3d at 837. Most of the factors support the trial court's determination—particularly the timing of appellant's request (the morning of trial) and trial counsel's repeated confirmation that she was, in fact, prepared to try the case that day. *See Windham*, 634 S.W.2d at 720. Accordingly, we conclude that the trial court acted within its discretion, and we overrule this issue. *See Gonzalez*, 117 S.W.3d at 837.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, appellant argues that he received ineffective assistance of counsel as "it related to his Motion for New Trial."

To reverse a conviction based on ineffective assistance of counsel, we must find: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced. *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)); *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022). "Prejudice may be measured in one of two ways: a reasonable probability of a different outcome or a reasonable probability of a different decision by the defendant." *Swinney*, 663 S.W.3d at 90. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112

9

(2011). Additionally, any claim for ineffectiveness of counsel "must be firmly founded in the record[,] and the record must affirmatively demonstrate the alleged ineffectiveness." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (citations omitted). "[I]f the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). A defendant's inability to make a showing under either *Strickland* prong defeats a claim for ineffective assistance. *Id.* at 587.

Two weeks after appellant was sentenced, appellant's counsel filed a motion for new trial, arguing the evidence had been insufficient to support his conviction and raising allegations of a violation of the Texas Code of Criminal Procedure article 39.14. *See generally* TEX. CODE CRIM. PROC. ANN. art. 39.14 (Discovery). Counsel alleged that she "received a jail incident report dated 10/23/2020 that was never provided to defense counsel prior to trial," and the report "contained information favorable to defense." *See generally Pena v. State*, 353 S.W.3d 797, 811–12 (Tex. Crim. App. 2011) ("Exculpatory evidence is that which may justify, excuse, or clear the defendant from alleged guilt, and impeachment evidence is that which disputes, disparages, denies, or contradicts other evidence."). The motion was unverified, no hearing was ever set, and it was overruled by operation of law.

We have no record detailing trial counsel's reasoning behind her actions or inactions. *See Johnson*, 624 S.W.3d at 586. Even should we assume without deciding that counsel proceeded in error, the motion contains but a conclusory assertion of an incident occurring while appellant was in custody *after* the indicted offense occurred. It is

10

unclear how such information would have resulted in a different outcome at trial. *See Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007) (rejecting appellant's ineffective assistance claim in part because his motion "d[id] not set out what evidence or information the 'named material witness' or a 'promised investigation' would have revealed that reasonably could have changed the result of this case"). To the extent it could have affected appellant's sentencing, the trial court's imposition of a sentence of twelve years' incarceration was well below the maximum sentence of ninety-nine years' imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.42(b), 30.02(c)(2); *Lampkin v. State*, 470 S.W.3d 876, 919 (Tex. App.—Texarkana 2015, pet. ref'd) (considering whether the appellant received the maximum sentence in an ineffective assistance of counsel analysis premised on counsel's alleged deficient performance during the punishment phase of trial); *see also Gutierrez v. State*, No. 13-22-00042-CR, 2023 WL 4662952, at *6 (Tex. App.—Corpus Christi–Edinburg July 20, 2023, no pet.) (mem. op., not designated for publication) (same). We conclude that appellant has not adequately shown that he was prejudiced by his trial counsel's inaction or action in this instance. *See Strickland*, 466 U.S. at 696. We overrule appellant's third issue.

## V. MODIFICATION OF JUDGMENT

An appellate court has the power to correct and reform the judgment of the trial court below to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and the nature of the case may require. *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Sanchez v. State*, 595 S.W.3d 331, 336 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see* TEX. R.

11

APP. P. 43.2(b) (permitting the intermediate courts of appeals to "modify the trial court's judgment and affirm it as modified").

The judgment of conviction states that appellant was convicted of a second-degree felony and indicates "true" in the field relating to an enhancement paragraph. Neither party disputes the manner of the trial court's oral rendition of appellant's sentencing or that appellant pleaded true to the felony enhancement. Therefore, we modify the judgment to add a statement that the trial court enhanced appellant's punishment based on a prior felony conviction and used the range of punishment for a first-degree felony. *See* TEX. R. APP. P. 43.2(b); *Sanchez*, 595 S.W.3d at 336.

## VI. CONCLUSION

We affirm the trial court's judgment as modified.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
17th day of August, 2023.