**Affirmed and Opinion filed November 8, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00452-CR

---

### NANCY WILLIS BENEFIELD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 61,759**

---

## O P I N I O N

A jury convicted appellant Nancy Willis Benefield of misapplying fiduciary property of $1,500 or more but less than $20,000, a state jail felony. *See* TEX. PENAL CODE ANN. § 32.45(c)(4) (West 2011). The trial court sentenced her to an agreed punishment of a $5,000 fine and confinement for one year, suspended with community supervision for four years. Appellant challenges her conviction in two issues, arguing that the trial court erred by refusing to instruct the jury on lesser-included offenses and denying her motion for a mistrial based on prosecutorial misconduct. We affirm.

BACKGROUND

Appellant was the executive director for Alvin Community Health Endeavor (ACHE), a nonprofit located in Alvin, Texas. ACHE operated a clinic to provide health and dental services to the community. Appellant hired a grant writer in 2004 to help ACHE qualify for federal grant money. ACHE received federal grant money from the U.S. Department of Health and Human Services, Health Resources Services Administration (HRSA) totaling more than $1.3 million from September 2005 through May 2007.

To remain eligible for grant money, ACHE was required to comply with a litany of rules and regulations, communicated to appellant through a "notice of grant award." Beginning with the first on-site visit in late 2005, the HRSA noted deficiencies in appellant's management of ACHE. The HRSA eventually ceased funding for ACHE in 2007 after identifying deficiencies and noncompliance with grant terms, most of which could be traced to appellant's conduct.

Appellant was indicted for theft and misapplication of fiduciary property. On the misapplication charge, the indictment alleged that appellant misapplied property valued at $200,000 or more by holding property in a manner that involved substantial risk of loss to ACHE. In particular, the indictment alleged that appellant (1) issued checks to herself from ACHE accounts in excess of her salary or allowable expenses; (2) employed and contracted with her family members and family-owned businesses; (3) made and permitted personal charges on ACHE credit cards; and (4) issued checks from ACHE accounts for expenses unrelated to ACHE business.

Len Wilson, an investigative auditor with the Office of the Attorney General of Texas Medicaid Fraud Control Unit, testified about the various debits and credits on ACHE's accounts. She also prepared spreadsheets to summarize her review of the financial records. The State's evidence concerning the four categories from the indictment suggested that appellant caused ACHE to pay (1) appellant $96,555.20 in excess of her salary of $33,000 per year for 2006 and 2007; (2) appellant's family

2

members $181,092.30; (3) appellant's unreimbursed personal expenses of $9,392.84 charged to ACHE's credit card; and (4) unallowable expenses of $27,314.64 from ACHE's checking account.

The trial court instructed the jury on the charge of theft of property valued at $20,000 or more but less than $100,000. The court also instructed the jury on the charge of misapplication of fiduciary property valued at $200,000 or more (first degree felony), $100,000 or more but less than $200,000 (second degree felony), $20,000 or more but less than $100,000 (third degree felony), and $1,500 or more but less than $20,000 (state jail felony). The trial court denied appellant's request for charges on lesser-included offenses of misapplication of fiduciary property valued at $500 or more but less than $1,500 (Class A misdemeanor), $20 or more but less than $500 (Class B misdemeanor), and less than $20 (Class C misdemeanor).

The jury found appellant not guilty of all charges except the state jail felony of misapplication of fiduciary property valued at $1,500 or more but less than $20,000. On appeal, appellant challenges her conviction based on the trial court's refusal to submit lesser-included offenses and to grant appellant's motion for a mistrial.

PROSECUTORIAL MISCONDUCT

In her second issue, appellant contends that the trial court erred by denying her motion for a mistrial "based on prosecutorial misconduct for covertly reading juror notes during trial, jury tampering," and violating Article 36.22 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.22 (West 2006). The State concedes that it engaged in prosecutorial misconduct but argues that the trial court did not err by denying a mistrial because the State gained no unfair advantage. We agree that the trial court did not abuse its discretion.

I.     **Factual Background**

The trial court allowed the jury to take notes during the trial.[1] During the lunch

---

[1] Whether jurors may take notes is left to the sound discretion of the trial court. *Johnson v. State*,

3

break on the second day of witness testimony, everyone left the courtroom except for one of the two State's attorneys, Rodney Boyles. During the break, the court's bailiff walked into the courtroom and discovered Boyles standing in the middle of the second row of the jury box. Boyles was bent over, looking down at the jurors' notes. Trial proceeded that afternoon with the State calling five witnesses—two of whom Boyles examined. During an afternoon break, the bailiff informed the trial court of his observation, but the trial court did not immediately bring this information to appellant's attention. The court scheduled a hearing for the following day and informed the parties of the allegation at that time.

The trial court questioned Boyles under oath. Boyles admitted to reading jurors' notes: "One note about double billing. I don't know—I don't know which juror. A note about—really just list of the witnesses and their positions in the company. . . . That's really all I remember. There's several others that were just scribbles and doodles, you know, just idle scribbles and doodles, nothing to read." The court granted appellant a continuance until the following day so there could be a full adversarial hearing on the matter. During that hearing, the court heard testimony from the bailiff, Boyles, and Deni Garcia, the other State's attorney prosecuting the case.

Boyles and Garcia worked at the Office of the Attorney General of Texas in the Medicaid Fraud Control Unit. Boyles testified that he had been practicing for over 20 years and had participated in over 100 trials. He had never before looked at jurors' notes during a trial. He testified, "I didn't consider it misconduct at the time. But that was obviously a gross mistake, and I've had a lot of time to think about it and do some research myself in the last eight or ten hours, 12 hours, and yeah, I mean, I will admit now that is misconduct."

He testified that after being questioned by the court during the previous day, he changed hotels and "had nothing to do with Attorney General business since about 10:00

---

887 S.W.2d 957, 958 (Tex. Crim. App. 1994); *Price v. State*, 887 S.W.2d 949, 954 (Tex. Crim. App. 1994).

4

o'clock yesterday morning." He answered negatively to whether anything he learned from reading jurors' notes affected the questions, tactics, or strategies he employed during the trial. He also testified that he did not learn anything that he thought would give him an advantage if he were to continue trying the case.

Garcia testified that Boyles did not tell her what he had done until after the court recessed for the day. She testified, "I know for certain that what he reported seeing didn't impact our questioning" of witnesses. She testified that the order of witnesses was predetermined, and the presentation did not change after Boyles read the jurors' notes. She explained that nothing Boyles learned from reading the jurors' notes would affect the substance of the remainder of the trial. Garcia did not prepare her witnesses differently because of anything Boyles learned from reading the jurors' notes.

The trial court denied appellant's motion for a mistrial, and Boyles did not participate in the remainder of the trial.[2]

## II.      Standard of Review

"A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). "Because it is an extreme remedy, a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored." *Id.* at 884–85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)).

We review a trial court's denial of a mistrial for an abuse of discretion. *Id.* at 884. We view the evidence in the light most favorable to the trial court's ruling, deferring to the trial court's resolution of historical facts and its determinations concerning credibility and demeanor. *See id.* The trial court's ruling must be upheld if it is within the zone of reasonable disagreement. *Id.*

---

[2] Brian Johnson, a State's attorney newly assigned to the case, informed the court that Boyles had been placed on a paid administrative suspension. Johnson and Garcia represented the State for the remainder of the trial. Garcia represented the State on appeal.

5

### III. No Violation of Article 36.22 of the Texas Code of Criminal Procedure

Appellant's argument assumes a violation of Article 36.22, entitled "conversing with jury," which states, "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22. "A violation of Article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted." *Ocon*, 284 S.W.3d at 884. Appellant contends that the State failed to rebut the presumption of harm because Boyles's testimony was self-serving. The State argues that appellant has failed to establish an Article 36.22 violation.

We hold that appellant has failed to establish an Article 36.22 violation. "[T]he language of Article 36.22 establishes two speakers, with attention directed toward the outsider's . . . speaking." *Id.* at 885 n.4; *see also Patterson v. State*, 293 S.W.3d 570, 571 (Tex. Crim. App. 1927) (op. on reh'g) (no violation of predecessor statute when a juror made a comment to a third party and the third party "made no reply to what the juror said;" held that this was "not 'conversing with a juror,'" and thus, there was no presumption of injury and no burden upon the State to rebut); \ *Gomez v. State*, 991 S.W.2d 870, 872 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (no error to deny motion for new trial based on Article 36.22 when two jurors were overheard speaking to each other in a public forum; there was "no evidence that the jurors communicated with an unauthorized person").

There is nothing in the record to suggest Boyles communicated anything to a juror outside the presence of, or without permission from, the court. Boyles's reading of jurors' notes was not a conversation for purposes of Article 36.22, and appellant failed to demonstrate a violation of Article 36.22. The State did not have the burden to rebut a presumption of harm, and the trial court could not have abused its discretion for refusing a mistrial on this ground.

## IV.      No Abuse of Discretion: Appellant Received a Fair Trial

The State concedes that Boyles committed prosecutorial misconduct. When faced with issues of prosecutorial misconduct, "the ultimate aim of the process must be fundamental fairness." *Ex parte Adams*, 768 S.W.2d 281, 293 (Tex. Crim. App. 1989) (prosecutor suppressed exculpatory evidence, deceived the trial court, and knowingly used perjured testimony); *see also Green v. Miller*, 483 U.S. 756, 765 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." (quotations omitted)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (prosecutors' failure to disclose that a juror had applied for a job in their office did not deprive the defendant of a fair trial). A fair trial is guaranteed by federal due process principles mandated by the Fourteenth Amendment of the United States Constitution and the due course of law rights identified in Article I, Section 19, of the Texas Constitution. *See Ex parte Adams*, 768 S.W.2d at 293.

When, as here, the alleged error is the trial court's refusal to grant a mistrial, our review is limited to whether the trial court abused its discretion—we do not review for harm under Rule 44.2(a) of the Texas Rules of Appellate Procedure. *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). "Nevertheless, 'whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis.'" *Id.* (quoting *Hawkins*, 135 S.W.3d at 77). Sometimes prosecutorial misconduct impugning a constitutional right is analyzed as constitutional error under Rule 44.2(a). *See Snowden v. State*, 353 S.W.3d 815, 817–18 (Tex. Crim. App. 2011) (prosecutor's improper jury argument related to defendant's failure to testify).

"At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination . . . ." *Id.* at 822. The parties have not identified, and research has not revealed, exactly what factors should guide our determination of whether

7

the trial court abused its discretion in a case involving a prosecutor reading jurors' notes. Factors considered in other prosecutorial misconduct cases have included (1) the severity of the misconduct or magnitude of the prejudicial effect of the misconduct; (2) any measures adopted to cure the misconduct; and (3) the certainty of conviction absent the misconduct, *i.e.*, the strength of the evidence. *See Archie*, 221 S.W.3d at 700. Additional considerations may include the nature of the error, whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it during deliberations. *See Snowden*, 353 S.W.3d at 822.

The trial court correctly identified its role when ruling on the motion for a mistrial based on prosecutorial misconduct: to ensure appellant received a fair trial.[3] The State suggests appellant received a fair trial because the State gained only irrelevant information that provided no substantive insight into the jurors' thought processes. Despite the particularly egregious conduct on behalf of the Attorney General's Office in this case, we must agree.[4]

Boyles's observation of a list of witnesses with job titles or "scribbles and doodles" could not have prejudiced appellant. We are left with the note about "double billing." Nowhere in the record is there an allegation or any evidence that appellant or ACHE engaged in any "double billing." Boyles asked one of his two witnesses after the lunch recess about "billing." The witness was Theresa Gay, a former employee of ACHE who processed patients at the front desk of the clinic and eventually became a clerk or records clinician. Boyles elicited the following testimony:

---

[3] The court announced, for example, (1) "My goal is to give your client a fair trial. If I can do that, I will. If I can't do that, there will be a mistrial granted"; (2) "You know, my goal is to just make sure [appellant] has a fair trial across the board"; and (3) "But my job now is to see if there's a way we can have a fair trial, and if there's not, what do I need to do."

[4] We also agree with the State's acknowledgement at oral argument before this court that the State's conduct was "shameful." Counsel continued:

> By going into the jury box and reading the notes, the prosecutor offended courtroom decorum, disrespected the tribunal, and by all accounts, satisfied the unwritten coffee-spewing test for egregiousness. It's simply inconceivable and shocking that a party — a prosecutor no less — would read jury notes during a trial.

Q: When you say the charts stacked up, did — was the result of that that the charts couldn't be billed?

A: No, no, that was not the result.

Q: The billing got done?

A: Yes.

         \*             \*            \*

Q: Did — did you ever have anything to do with medical billing of any kind?

A: With what?

Q: Medical billing.

A: No.

Q: Either dental or medical?

A: No.

These questions about "billing" appear to have elicited no incriminating testimony concerning appellant's misapplication of fiduciary property. The testimony does not appear to have addressed the juror's potential interest in "double billing." And, as appellant argues under her first issue on appeal, her conviction likely rested entirely on the fact that she made personal charges on the company's credit card. Accordingly, appellant's conviction had nothing to do with inadequate or double billing.

Further, both Boyles and Garcia testified at the mistrial hearing that nothing Boyles learned from reading the jurors' notes impacted the presentation of their case, including the questions asked of witnesses and the order in which witnesses were called. The trial court was entitled to find their testimony credible, and we must view their testimony in the light most favorable to the trial court's ruling.

Because none of the trial testimony concerned double billing, and the trial court believed Boyles and Garcia's testimony that they did not alter their presentation of the evidence, this case is not comparable to *Alexander v. State*, 919 S.W.2d 756 (Tex. App.—Texarkana 1996, no pet.) In *Alexander*, the prosecutor learned of a juror's particular concern during trial, recalled the relevant witness, and asked the witness to

9

clarify the issue important to the juror.  *Id.* at 765, 768.  The court of appeals reversed the conviction, reasoning that the State furthered its "important strategy" of presenting a consistent case by recalling the witness and clarifying the issue; and although the issue was not particularly relevant to the ultimate issues in the case, the State apparently found the issue "important enough . . . to recall a witness to clarify the matter."  *Id.* at 768–69.  Although Boyles may have learned of a particular juror's concern during trial, the State did not use this information to gain any unfair advantage—the prosecutors' presentation of the evidence was unaffected.

We also note that there is no evidence the jurors were aware of any misconduct, and there was no testimony about "double billing."  Accordingly, it is highly unlikely that Boyles's conduct impacted their deliberations.

Of course, Boyles's conduct in this case was "severe" in the abstract sense—we do not mean to downplay its egregiousness.  It was "totally inappropriate."  *See Wellner v. Beechwood Fire Dep't*, 495 N.W.2d 102 (Wis. Ct. App. 1992) (table op., not designated for publication) (civil attorney read jury notes during lunch break; no prejudice shown).  Conduct such as eavesdropping on jurors is "low and disreputable"; "indefensible"; "a flagrant contempt of the court"; and a "most reprehensible invasion of the precincts of justice, which should have been, if it was not, promptly and severely punished by the trial court."  *Orman v. State*, 6 S.W. 544, 546 (Tex. Ct. App. 1887) (newspaper reporter eavesdropped on jurors); *see also Acosta v. State*, 72 S.W.2d 1074, 1076 (Tex. Crim. App. 1934) ("It is clearly not permissible that a jury shall be shadowed.").

Nonetheless, a mistrial is not necessarily required even though a State's attorney should be punished for misconduct.  *Cf. Brown v. State*, 921 S.W.2d 227, 230 (Tex. Crim. App. 1996) (prosecutor's violation of disciplinary rule did not require reversal when violation did not deprive defendant of a fair trial; appropriate remedy was to file a complaint with the State Bar).  A defendant may receive a fair trial even though the State engaged in misconduct.  We cannot respond to the egregiousness of the State's conduct with a "punitive impulse."  *Snowden*, 353 S.W.3d at 821.  In fact, we are expressly

10

prohibited from considering purely punitive factors such as "the source" of the error and "whether declaring the error harmless would encourage repeat performances by the State." *Id.*

Here, therefore, the trial court was appropriately concerned with the fairness of the proceeding rather than the punishment of the State. The court acted within the zone of reasonable disagreement when it concluded that appellant received a fair trial, and thus, the extreme remedy of a mistrial was unwarranted. The court did not abuse its discretion.

Appellant's second issue is overruled.

### JURY CHARGE ON LESSER-INCLUDED OFFENSES

In her first issue, appellant contends that she is entitled to a new trial because the trial court erroneously refused her request to charge the jury on lesser-included offenses of misapplication of fiduciary property.

## I. Standard of Review

"The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis: (1) Is the requested charge for a lesser-included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury?" *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). The first step is a question of law and does not depend on the evidence produced at trial. *Id.* When, as here, the only difference between the two offenses is the amount of injury or loss, the requested charge is for a lesser-included offense. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(2) (West 2006) ("An offense is a lesser included offense if . . . it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission."); *see also Lackey v. State*, 290 S.W.3d 912, 920 (Tex. App.—Texarkana 2009, pet. ref'd) (criminal mischief); *Charles v. State*, No. 14-01-00802-CR, 2002 WL 1733672, at *4 (Tex. App.—Houston [14th Dist.] July 25, 2002, pet. ref'd) (not designated for publication) (theft).

11

The dispute in this appeal concerns the second step. Under this step, we must "determine if there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Rice*, 333 S.W.3d at 145. "'[T]here must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.'" *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011) (alteration in original) (quoting *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003)). "The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense." *Id.* (quoting *Rice*, 333 S.W.3d at 145). Stated differently, appellant is entitled to the lesser-included offense of misapplication of fiduciary property valued at $20 or more but less than $1,500 if there is record evidence that would allow a rational jury to conclude that appellant intentionally, knowingly, or recklessly misapplied property valued at no more than $1,500 that she held as a fiduciary in a manner that involves substantial risk of loss to the owner of the property or person for whose benefit the property is held.

Our review of the record evidence to determine whether a defendant is entitled to a charge on a lesser-included offense considers whether there is more than a scintilla of evidence in support of the offense; and we do not consider the credibility of the evidence or whether it is controverted or in conflict. *See id.* However, we will credit the defendant only with reasonable inferences that may be drawn from the evidence. *See id.* at 447 (rational jury could infer that defendant lacked intent to commit theft after breaking into the victim's home because the victim testified that the defendant said he was looking for his dog 15 minutes earlier; noting that such inference would be irrational if the defendant's statement preceded the break-in by a month). "The evidence must be evaluated in the context of the entire record." *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998), *cited in Freddie v. State*, No. 14-09-00275-CR, 2011 WL 166896, at *6 (Tex. App.—Houston [14th Dist.] Jan. 11, 2011, pet. ref'd) (mem. op., not designated for publication).

12

## II. Appellant Was Not Entitled to a Jury Charge on Lesser-Included Offenses

Appellant contends that the jury rejected the State's theory of the case concerning whether appellant misapplied fiduciary property by authorizing payments to herself in excess of her salary, payments to appellant's family members, and payments from ACHE's checking account. Indeed, each of these charged categories of expenditures concerned more than $20,000, and the evidence conflicted regarding whether these expenditures created a substantial risk of loss for ACHE. Appellant suggests the jury must have convicted her based on the fact that she made personal charges on an ACHE credit card.

Appellant contends that a jury could rationally believe "appellant failed to pay for some personal expenses made on the ACHE [credit] card and that the amount appellant failed to pay was less th[a]n $1,500." Appellant points to her trial testimony concerning credit card purchases at a number of restaurants. At trial, appellant responded affirmatively to the question, "So are you conceding, then, that ACHE money was spent at those restaurants, health care money?"

On appeal, appellant calculates those restaurant expenditures as $1,160[5] and argues that a reasonable jury could have believed that, "based on appellant's admission that ACHE money was spent at those restaurants, appellant did not reimburse ACHE for those restaurant expenses but that she reimbursed ACHE for all other personal purchases." With this argument, appellant invites this court to parse each of the expenditures mathematically to determine whether some aggregate of expenditures alleged to have been misapplied could remain below the $1,500 ceiling. Appellant's argument is flawed, and thus not reasonable, for two reasons. First, although appellant admits spending ACHE money, she does not acknowledge that she misapplied any of the money.

---

[5] Although this amount is not identified specifically through any trial evidence, counsel provided this amount at oral argument. We have reviewed State's Exhibit No. 27, a listing of credit card purchases, and it appears that unreimbursed expenses for restaurants could be as low as $1,070.62. Our disposition of this appeal is not affected regardless of which amount is correct.

Both before and after appellant's alleged "admission," she repeatedly testified that she repaid *all* personal expenses to ACHE:

> Q:      Was it your understanding that you could reimburse for any personal expenses you charged on it?
>
> A:      Yes.
>
> Q:      And did you do that?
>
> A:      Yes.
>
> Q:      And to your knowledge did you ever charge anything that, you know, wouldn't have been appropriate as an ACHE business expense that didn't get reimbursed.
>
> A:      Never.
>
> *            *            *
>
> Q:      . . . We were talking about the personal charges made on the [credit] card, and you made a statement that you were very careful about those and that you always paid it back.
>
> A:      Yes, ma'am.
>
> *            *            *
>
> Q:      You said yesterday you paid checks back to ACHE.
>
> A:      I said I paid it — I don't know what I said checks. I said I paid the money back.
>
> Q:      The record will reflect what you said.
>
> A:      May have been cash.
>
> *            *            *
>
> Q:      Do you believe you paid back any [credit card] expenditures that you were aware of that you thought weren't allowable?
>
> A:      I know I did.[6]

An alleged member of the board of directors for ACHE, Ruth Parker testified similarly that the board understood appellant "could use that credit card for something that was

---

[6] Appellant acknowledges this testimony in the statement of facts of her appellate brief: "Appellant admitted to making personal charges on the ACHE Amex card but testified that she reimbursed them. . . . Appellant believed it was OK to make personal charges as long as they were reimbursed. Appellant testified that she took care of all of her personal charges. . . . Appellant maintained that all personal charges were repaid."

14

hers, and she could use it for something for us at ACHE, but we paid separate bills. [Appellant] paid her part, and we paid our part."

Further, appellant testified that unreimbursed restaurant expenses were not personal expenses at all—such expenses were proper expenditures for employee morale, and she bought food for meetings of the board of directors. Accordingly, appellant never admitted to misapplying funds in an amount less than $1,500, and there is no other evidence in the record to support that finding. *See Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) ("A defendant's own testimony that he committed no offense, or testimony which otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser-included offense."); *see also Johnson v. State*, 84 S.W.3d 726, 731 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("'When the defendant denies commission of any offense and, therefore, presents no evidence establishing commission of a lesser-included offense, he is not entitled to a charge on the lesser offense.'" (quoting *Fraga v. State*, 940 S.W.2d 736, 738 (Tex. App.—San Antonio 1997, pet. ref'd))); *accord Cahvarriga v. State*, 156 S.W.3d 642, 650 (Tex. App.—Tyler 2004, no pet.); *Blunt v. State*, No. 14-08-00820-CR, 2009 WL 4342510, at *3 (Tex. App.—Houston [14th Dist.] Dec. 3, 2009, no pet.) (mem. op., not designated for publication).

The testimony appellant relies upon is not a scintilla of evidence that she committed any offense up to but not in excess of $1,500. *See Bignall v. State*, 887, S.W.2d 21, 24 (Tex. Crim. App. 1994) (holding that there must be some affirmative evidence that the defendant is guilty of no more than the lesser-included offense). In fact, we note that even if we could credit appellant with the alleged inference that she admitted to not repaying ACHE for personal expenditures based on her admission that ACHE money was "spent at those restaurants," appellant similarly testified that "ACHE paid" non-restaurant expenditures, which would make the total expenditures exceed the $1,500 threshold for a misdemeanor instruction. During her testimony, the State identified credit card purchases made on December 24, 2006, at "Dillard's; JCPenney; Journeys; Too, Inc.," and the State elicited the following:

Q:      You — do you agree or disagree that ACHE paid for those charges?

A:      Yes, ma'am.

Q:      Which one?

A:      I agree.  I'm sorry.

                    *                          *                          *

Q:      Is it your testimony that you did not make those charges or that you did make those charges?

A:      Since it's my card number and it's on here like this, I'm going to say I must have made the charges.

Appellant concedes on appeal that those charges were, respectively, $162.38; $263.69; $75.71; and $88.50.  When those amounts are added to the unreimbursed restaurant expenses, the total amount of "ACHE money . . . spent at those restaurants" and the Christmas Eve purchases, for which "ACHE paid," is at least $1,660.90.

There is a second, independent reason that we reject appellant's argument regarding the analysis of this lesser-included offense.  Appellant relies on the notion that she is entitled to a lesser-included offense because the jury was free to believe or disbelieve any of the State's evidence.  Thus, the argument goes, the State alleges many expenditures of misapplied sums of money that are individually less than $1,500 because the jury is entitled to believe a few of the small sums and disbelieve the rest, so a lesser-included offense is warranted.  The Court of Criminal Appeals categorically rejects this superficial application of "the rational jury" test to the analysis of lesser-included offenses.  *See Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) ("It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense.").  Instead, appellant must point to affirmative evidence, proffered by either party, that a rational jury could rely upon to conclude that appellant committed the misdemeanor offense, and no more.  *See Goad*, 354 S.W.3d at 447–48; *Bignall*, 887 S.W.2d at 24; *see also Robalin v. State*, 224 S.W.3d 470, 476 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  This she has not done.

We conclude there is no evidence in the record to permit a jury to rationally find

16

that if appellant is guilty, she is guilty only of the lesser-included offense of misdemeanor misapplication of fiduciary property valued at less than $1,500.

Appellant's first issue is overruled.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/     Sharon McCally
           Justice

Panel consists of Justices Boyce and McCally and Senior Justice Mirabal.[7]

Publish — TEX. R. APP. P. 47.2(b).

---

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.