

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00262-CR

———————————————

LARRY CHARLES PERRY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 58,250-A

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellant Larry Charles Perry appeals his conviction for the third-degree felony of evading arrest or detention using a vehicle. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A). A jury convicted him of the offense. The trial court also found that the enhancement allegations were true and sentenced Appellant to a term of thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

In a single issue, Appellant argues that the trial court erred by failing to instruct the jury on the lesser-included misdemeanor offense of evading arrest or detention on foot. We conclude that Appellant failed to preserve his claim because his argument on appeal does not comport with the argument he made to the trial court and that even if his claim had been preserved, the evidence did not permit the jury to find that Appellant was guilty only of the offense of evading arrest or detention on foot. We affirm the judgment of the trial court.

## II. Factual and procedural background

### A. The pursuit of Appellant

The record consists primarily of the testimony of two Wichita Falls police officers and a dash-cam video and its associated audio. At approximately 9:00 p.m. on a Friday, the two testifying officers were watching a house, which was described as a "known dope sale home[]." A white SUV pulled up to the house, and the vehicle's

2

occupant entered the house, stayed for two to three minutes, and returned to his vehicle.

As described by the officers and depicted in the recording, the officers followed the SUV in their marked patrol vehicle. The officers observed the SUV's driver commit a traffic violation by failing to signal.

The SUV reached a street with several commercial establishments. The officers drove within a couple of car lengths behind the SUV and activated the patrol vehicle's overhead lights. The SUV did not stop. The officers then repeatedly blew their vehicle's air horn for approximately ten seconds, again prompting no response from the SUV. The officers then activated the siren. Within a few seconds from the time that the officers activated the siren, the vehicle turned into a residential area. At least one additional police car joined the chase.

While travelling through the residential neighborhood, the SUV followed a course that one of the officers described as a looping figure-eight. There was almost no traffic on the residential streets where the pursuit occurred. The pursuit of the SUV lasted approximately three minutes with speeds ranging between twenty and forty miles per hour. The officers were often within feet of the SUV and had their overhead lights and siren activated for two and a half minutes of the time that they were behind the SUV. The SUV drove through four stop signs, only slowing enough to make turns but without showing any inclination to stop. During the multi-block pursuit, there were numerous places where Appellant could have pulled over.

One officer stated that during the pursuit, it appeared that the driver was throwing something from the vehicle's window. The other officer responded to this observation by saying, "It looks like it, but I can't tell." On cross-examination, the officer who had observed items being thrown out of the vehicle reiterated, "In the video while we were traveling south on Buchanan, you can actually see what we believed [to be] some type of contraband or something being thrown out of the window. On the video and in person, I distinctly remember being able to see something flying through the air."

**B. Appellant's brief compliance with the officers' commands**

The pursuit ended when another patrol vehicle with its overhead lights flashing faced the SUV in the oncoming lane of traffic. The officers conducted what they described as a felony stop, meaning that they drew their weapons as they emerged from their vehicles and repeatedly yelled at the SUV's driver, Appellant, to put his hands up and to stop. Appellant stepped from the SUV, looked back at the pursuing officers' vehicle, placed one hand in the air, shut the door of the vehicle with his other hand, and then placed that hand in the air. He then stepped in front of the SUV, and once out of the officers' line of sight, began to run. The sequence of events from the time that Appellant opened the SUV's door until he ran lasted eight seconds. A number of officers pursued Appellant for approximately 100 to 150 feet, and the foot chase ended abruptly when he was Tased.

Appellant immediately began protesting, "I ain't got nothing," and "I ain't did nothing." In his brief, Appellant claims that at a certain point in the recording, he can be heard to say, "I didn't see you." We have listened to the video repeatedly; the exchange at the identified point consists of the officer instructing Appellant not to dig (presumably in his pockets), and Appellant twice responding, "I ain't digging."

**C.  Appellant's pleas for the officers not to seize his vehicle and his emphasis that he had gotten his vehicle to his residence**

An officer told Appellant that he was being arrested for evading. Appellant again protested that he had not done anything and that he "ain't got nothing else" that he wanted to tell the officer about. Appellant then asked about his keys, and the officer told him that his vehicle was being seized. Appellant began begging the officers not to seize his vehicle. One officer told him that was not how it worked and also told Appellant that he had been given the "chance to stop and it could have all been avoided, but you opted to go with a felony, so we're going to have to follow our protocol and seize your vehicle." Appellant continued to plead and said, "I stay right there." Appellant then gave the officer his address.

The conversation with the officers apparently continued once Appellant was placed in their patrol vehicle. Once again, Appellant pleaded, "Please don't tow my car," and also said, "I'm parked at home." The pleading continued, and Appellant then reemphasized that his vehicle was "at home." He then said, "Oh man, I'm sorry

for running." Appellant said that he'd "pay more money," that he knew he was wrong, and that he was sorry.

The jury heard Appellant's acknowledgment that he had a little weed on him. One officer testified that after Appellant had been Tased, the officer had rolled him over and had seen a "loose, green leafy substance all over his clothing." Appellant also had a marijuana cigarette in the pocket of his shorts.

### D. Appellant's trial theory

Appellant's trial theory began in voir dire when his counsel questioned jurors about their nervousness when they suddenly saw the lights of a police car in their rear-view mirror.

During the trial, Appellant's counsel laid out a theory that aligned with the pleas that Appellant had made to the officers that his vehicle should not be seized because he had made it home. Counsel's explanation was that Appellant did not stop because he was looking for a safe place to stop and that Appellant had concluded that his residence was the best place to stop. This argument was made when counsel requested that the jury charge include the lesser-included offense of evading on foot:

> Judge, I'm asking the Court to include an instruction in reference to a lesser-included evading on foot. I do believe that there was a scintilla -- enough evidence to show that a person commits an offense if he intentionally flees from a person he knows is a peace officer.
>
> . . . .
>
> And essentially I say that, Judge, because all of the elements for evading are the same except for the vehicle portion. *And I believe the State*

6

*showed me a case in reference to, I think, <u>Smith V State</u> where the Court finds that based upon the facts in that case, you can't -- a jury couldn't infer that the individual was trying to get the car to a different location to park it because in that particular case that they're talking about, the defendant stopped -- never really stopped the car, jumped out of the window, and ran across traffic. And they said that there was no way in that instance that a jury could find that he was looking for a place to park and was only fleeing when he was on foot. And I say that this case is distinguished from that one because obviously it was a slow-speed chase, he did park the car, and then he got out slowly and then ran.* [Emphasis added.]

The claim—that Appellant was not fleeing during the pursuit but was simply

trying to get home—carried forward into Appellant's argument to the jury:

A person acts intentionally or with intent with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

*And I believe that Mr. Perry was trying to get his truck home.* And granted, he probably was anxious, he probably was afraid, he probably knew that -- he probably was even a little disoriented because it didn't look like he went straight home, probably because there was marijuana in the vehicle. I don't know if it was smoked, I don't know if he had smoked it, I have no idea. *But all of those things taken together would probably mean that it may not have been his conscious objective to flee.* **It was his probable conscious objective to try to get that automobile to his house. And he succeeded in doing that, but in the process he didn't show prompt compliance.** *And you're charged with figuring out whether it was his conscious objective in doing that.*

*And I believe if you look at the totality of everything, when he actually got that vehicle to a location that was near his house, he then got out and fled.* He did. It was -- that seemed to me that was conscious, that he -- he was giving -- he was receiving commands, and he did not adhere to those commands.

Now, he's probably gonna get up here and say, but they used that air horn, *they made their presence known, and Mr. Perry, like I said, was probably afraid, probably anxious, and* **was just trying to get that vehicle back to his house.** *And whether that is a conscious objective, that's up to you guys to decide.* **But I believe if you look at everything, I think it was his**

7

*conscious objective to try to get that automobile to his house.*
[Emphasis added.]

## III. Analysis

### A. The legal principles at play and a summary of why we overrule Appellant's sole issue

Appellant offers interrelated arguments for why the trial court should have submitted an instruction on the lesser-included offense of evading on foot (or without the use of a vehicle). The arguments rely primarily on the premise that he did not evade the police using a vehicle because he did not know that he was being pursued by the police until he had arrived home. An ancillary argument is that because of Appellant's brief compliance with the officers' commands as he maneuvered to the front of his vehicle and then ran, he allegedly committed two separate offenses— evading using a vehicle and evading on foot.

Appellant failed to preserve error on his claim that the trial court erred by not submitting the lesser-included offense because his argument on appeal does not comport with his argument at trial. Further, to obtain an instruction on the lesser-included offense, the evidence must be such that it would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense—in this case, evading on foot. The inferences that Appellant relies on to argue that a jury could reasonably find him guilty only of the offense of evading only on foot are untenable. We also reject Appellant's final argument that his few seconds of compliance with the officers' commands after he had stopped his vehicle split his

8

actions into two separate offenses, with one being evading using a vehicle and the other being evading on foot. The trial court committed no error when it refused to give the jury the instruction on the lesser-included offense.

### B. The elements of evading using a vehicle and of evading on foot

"Essentially, a person commits a crime under [S]ection 38.04 [of the Penal Code] if he knows a police officer is attempting to arrest or detain him[] but nevertheless refuses to yield to a police show of authority." *Jackson v. State*, Nos. 05-15-00414-CR, 05-15-00415-CR, 2016 WL 4010067, at *7 (Tex. App.—Dallas July 22, 2016, no pet.) (mem. op., not designated for publication). A person may evade using a vehicle or on foot. The elements of the offense of evading using a vehicle are "a person: (1) intentionally; (2) flees; (3) from a person; (4) he knows is a peace officer or federal special investigator; (5) attempting to lawfully arrest or detain him; and (6) the actor uses a vehicle while in flight." *Id.*[1] Evading using a vehicle and evading on foot differ only in that the latter does not include the element of using a vehicle. *Powell v. State*, 206 S.W.3d 142, 143 (Tex. App.—Waco 2006, pet. ref'd). Evading without the use of a vehicle is a Class A misdemeanor. *See generally* Tex. Penal Code

---

[1]The State must also prove that the attempted arrest or detention was lawful. *See Jackson*, 2016 WL 4010067, at *8. There is no contention in this case that the attempted detention of Appellant was unlawful.

Ann. § 38.04(b). The penalty increases to a felony of the third degree when "the actor uses a vehicle . . . while the actor is in flight." *Id.* § 38.04(b)(2)(A).[2]

Using different "means of locomotion" during flight does not break the flight into two separate offenses; instead, the consequence of using a vehicle elevates the offense to a felony because the felony offense "requires only that a vehicle be used at some time during the commission of this offense." *See Hobbs v. State*, 175 S.W.3d 777, 779 (Tex. Crim. App. 2005).[3] Thus, evading using a vehicle during one part of the flight and then resorting to foot "constitute[s] one continuous criminal act of evading." *Johnson v. State*, No. 13-17-00545-CR, 2019 WL 3884873, at *4 n.4 (Tex.

---

[2]Because the legislature passed multiple amendments to Section 38.04 in 2011, there was confusion about whether the statute made evading using a vehicle a third-degree felony. We have previously concluded that it does. *See Adetomiwa v. State*, 421 S.W.3d 922, 927 (Tex. App.—Fort Worth 2014, no pet.) (concluding that the offense of evading arrest or detention is a third-degree felony when the defendant uses a vehicle in the flight, irrespective of prior convictions).

[3]As stated in *Hobbs*,

[The language of Section 38.04] presents an issue of statutory construction, particularly whether the different means of locomotion are "allowable units of prosecution" under Section 38.04(a) which, in relevant part, defines the offense as a person who "flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." This language plainly does not define separate offenses (or "allowable units of prosecution") when different means of locomotion are used. In addition, Section 38.04(b)(1), which elevates the punishment level for the offense defined in Section 38.04(a) when a vehicle is used, requires only that a vehicle be used at some time during the commission of this offense.

175 S.W.3d at 779 (footnotes omitted).

10

App.—Corpus Christi–Edinburg Aug. 8, 2019, no pet.) (mem. op., not designated for publication); *see Smith v. State*, 483 S.W.3d 648, 656 n.6 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("We further note that abandoning one's vehicle during a police chase and continuing on foot is a continuation of evading in a vehicle."); *see also Lara v. State*, Nos. 13-04-282-CR, 13-04-299-CR, 2007 WL 431241, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 8, 2007, no pet.) (mem. op., not designated for publication) ("[T]he [S]tate is precluded from seeking multiple convictions of evading arrest when the criminal act is one continuous course of conduct . . . .").

A person "flees" by giving anything less than prompt compliance with an officer's direction to stop. *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (quoting *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.)). Thus, the fact that a defendant prompted only a slow-speed chase does not free a defendant from culpability: "The statute does not require high-speed fleeing, or even effectual fleeing. It requires only an attempt to get away from a known officer of the law." *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.). In other words, "fleeing slowly is still fleeing." *Id.*

There is no particular distance or speed that must be covered in the chase to infer that the defendant is fleeing: "Although speed, distance, and duration of pursuit are factors in determining whether a defendant intentionally fled, 'no particular speed, distance, or duration is required to show the requisite intent if other evidence establishes such intent.'" *Houston v. State*, No. 04-15-00513-CR, 2016 WL 3362055, at

11

*3 (Tex. App.—San Antonio June 15, 2016, no pet.) (mem. op., not designated for publication) (quoting *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.)); *see also Lopez v. State*, No. 04-17-00359-CR, 2018 WL 3747817, at *2 (Tex. App.—San Antonio Aug. 8, 2018, no pet.) (mem. op., not designated for publication) (same).

The culpable mental state required to establish the offense of evading turns on the circumstances surrounding the conduct. *Riggs v. State*, 482 S.W.3d 270, 276 (Tex. App.—Waco 2015, pet. ref'd). Specifically, "the act of fleeing becomes criminal only because of the actor's knowledge that a peace officer is attempting lawfully to arrest or detain the actor." *Id.* But the fact that a person provides an explanation for fleeing "does not negate or supersede an intent to evade police authority, which requires only that an actor (1) acknowledge an officer is attempting to lawfully detain him, and (2) declines to yield despite that knowledge." *Johnson*, 2019 WL 3884873, at *4.

The element that an officer is attempting to arrest or detain the person generally is met by the "officer displaying authority by the use of emergency lights and siren." *Id.* at *3; *King v. State*, No. 01-18-00335-CR, 2019 WL 5432053, at *3 (Tex. App.—Houston [1st Dist.] Oct. 24, 2019, no pet.) (mem. op., not designated for publication) ("Evidence that a police officer is asserting authority and attempting to arrest or detain an individual includes use of emergency lights and sirens, pointing to a driver to pull the vehicle over, and issuing verbal commands." (citing *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd))).

12

**C. The standards for determining whether the trial court must submit an instruction on a lesser-included offense**

As the Texas Court of Criminal Appeals has noted, "The two-step test for determining whether a trial court is required to give a requested instruction on a lesser-included offense is well established." *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). The two steps are as follows:

- First, the trial court must "determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law." *Id.* (citing *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007)). "Under this first step of the test, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged." *Id.* (citing *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011), and Tex. Code Crim. Proc. Ann. art. 37.09).

- Second, "the analysis asks whether there is evidence in the record that supports giving the instruction to the jury." *Id.* at 924–25.

  o "Under this second step, a defendant is entitled to an instruction on a lesser-included offense when there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty *only* of the lesser-included offense." *Id.* at 925 (emphasis added).

13

o "The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense." *Id.*

- In making the determination whether the lesser-included offense is a rational alternative, all the evidence admitted at trial must be examined (not just the evidence presented by the defendant), and "[a]nything more than a scintilla of evidence is adequate to entitle a defendant to a lesser charge." *Id.*

- The "threshold showing is low, [but] it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Id.*

- The determination, however, does not turn on the credibility of the evidence suggesting a lesser offense; "the standard may be satisfied

14

if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Id.*

## IV. Application

**A. Appellant failed to preserve his request for an instruction on a lesser-included offense based on the claim that he "did not intentionally flee from a person he knew was a peace officer while using a vehicle." Further, the record does not support the submission of an instruction that relies on an inference that Appellant did not know he was being pursued.**

### 1. Appellant did not preserve his claim of error based on a profession that he did not see his pursuers, and the record fails to establish that he made such a profession.

In this appeal, we deal only with the second step of the test to determine whether to submit a lesser-included offense; that step asks if there is evidence in the record that supports giving the jury the instruction requested by Appellant. *See id.* at 924–25. The State concedes that the first step of the test is met: "Evading arrest or detention on foot is, through an element-based comparison, a lesser-included offense of evading arrest or detention in a vehicle. Thus, [Appellant] satisfies the first requirement for obtaining a lesser-included-offense instruction."

If we understand Appellant's first contention, the trial court erred by failing to submit an instruction on evading on foot because it was dark, the officers did not immediately activate the siren on their vehicle, and pivotally, Appellant stated, "I

15

didn't see you." He uses this profession as the first basis to establish his overarching contention that he could not hold an intent to flee until he knew that the police sought to detain him and that he only acquired that knowledge once he stopped at his residence. Appellant's argument continues that he fled on foot after he became aware that he was being pursued. But as explained below, this basis for submitting the instruction on the lesser-included offense was never presented to the trial court, and for this reason, error based on his contention is forfeited. Further, the record does not support the contention that he claimed that he was ignorant of the pursuit until he stopped his vehicle.

A trial court has no sua sponte obligation to instruct a jury on a lesser-included offense; the defendant must preserve error by requesting an instruction on the lesser-included offense. *Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010); *Gipson v. State*, No. 05-16-01065-CR, 2017 WL 4247965, at *2 (Tex. App.—Dallas Sept. 25, 2017, no pet.) (mem. op., not designated for publication) ("A defendant who did not request an instruction on a lesser[-]included offense waives his right to complain on appeal that the trial court was required to give the instruction."). Generally, to make an adequate charge objection,

> [t]he objection must be specific and clear enough to apprise the trial court of the nature of the objection—this specificity requirement is to enable the trial court ["]to know in what respect the defendant regards the charge as defective and to afford him an opportunity to correct it before reading the charge to the jury.["]

*Hernandez v. State*, No. 02-17-00353-CR, 2019 WL 490510, at *6 (Tex. App.—Fort Worth Feb. 7, 2019, pet. ref'd) (mem. op., not designated for publication); *see also* Tex. R. App. P. 33.1(a)(1) (requiring timely and specific request to "state[] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint"). Further, to preserve error that challenges the failure to include an instruction requires an objection, it is axiomatic that the objection made to the trial court must comport with the one made on appeal. *See Pennington v. State*, 697 S.W.2d 387, 390 (Tex. Crim. App. 1985) ("Error presented on appeal must be the same as the objection raised before the trial court.").

Applying these principles of preservation to an objection based on the failure to submit a lesser-included offense, an appellant cannot offer one basis for submitting the issue in the trial court and then offer a new basis on appeal. *See Gusman v. State*, No. 01-08-00621-CR, 2010 WL 2991210, at *7 (Tex. App.—Houston [1st Dist.] July 29, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that error was not preserved when appellant made different arguments at trial and on appeal regarding why lesser-included offenses of felony-murder or murder should have been submitted in a charge that submitted the greater offense of capital murder); *Newman v. State*, No. 14-05-01125-CR, 2007 WL 1437624, at *4 (Tex. App.—Houston [14th Dist.] May 17, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that error was not preserved because appellant offered different bases for submission of lesser-included offense of burglary of a building and because "Appellant's rationale

17

for the requested instruction differ[ed] substantially and [did] not comport with the rationale for his request at trial").

Here, Appellant failed to preserve error. Above, we quoted the argument that Appellant's counsel made to the trial court as the basis for submitting the lesser-included offense of evading on foot: Appellant was looking for a place to park. He carried that theme into his jury argument. Nothing in the argument suggested that Appellant did not know that he was being pursued by the police until he stopped his vehicle. Thus, the rationale for Appellant's objection in the trial court does not comport with his argument on appeal. The trial court never had the opportunity to evaluate the argument that Appellant makes on appeal and to decide whether it presented a basis to submit the lesser-included offense. Appellant has failed to preserve error. *See* Tex. R. App. P. 33.1(a)(1).

Even if error were preserved, we would still reject Appellant's claim of error. Appellant states that the following facts raise a scintilla of evidence to support his claim that he did not know that his vehicle was being pursued:

> It was dark outside on that night. The officers did not activate the patrol car siren until approximately 30 seconds into the three-minute pursuit. [Appellant] later told the officer[s,] "I didn't see you." Based on these facts a jury could rationally believe [Appellant] did not realize he was being pursued. [Citations omitted.]

Apparently, part of the suggestion from the quote is that it was not physically apparent that the police were pursuing because it was dark and the police used their siren only for the latter two and a half minutes of a three-minute chase. This

18

argument offers no evidence that reasonably supports a conclusion that Appellant did not know that he was being pursued. Appellant's argument assumes that he would know he was being pursued once the police sounded their siren but acknowledges that the siren was activated for the vast majority of the pursuit. The video of the pursuit shows that the darkness, if anything, accentuated the flashing of the police car's overhead lights, and there is no explanation why Appellant could not have seen the lights directly behind him. Nor can we hear Appellant's protest, "I didn't see you," which he alleges is found on the recording. Certainly, we are not to decide whether the evidence suggesting a lesser-included offense is credible, but that does not mean that we must enter a realm of fantasy and accept a suggestion so farfetched as the one that Appellant did not know that he was being pursued based on the unsupportable inferences that Appellant asks us to draw.

**2. Appellant did not preserve his claim of error based on a claim that his conduct created a fact question regarding whether he had an intent to flee, and the record does not support the inferences that Appellant relies on to make that claim.**

Appellant next appears to argue that his behavior while being pursued by the police created a fact question regarding whether he had intended to flee from his pursuers and thus warranted the submission of the lesser-included offense because the jury could believe that he had formulated an intent to flee only after he had stopped his vehicle and had run.

This argument suffers from the same preservation flaw as Appellant's first argument. His counsel appeared to argue to the trial court and the jury that Appellant was fleeing but that his flight had the specific goal of getting his car home— apparently in the hope that by doing so, it would not be seized.

Appellant's change in emphasis from trial to appeal implicitly recognizes that the argument he made at trial was tantamount to a confession of guilt. Appellant's argument that he did not show prompt compliance because he was trying to get his car home was a concession that he had operated his vehicle with the requisite intent and had committed the offense with which he was charged. *See Ford v. State*, Nos. 02-14-00176-CR, 02-14-00177-CR, 2015 WL 3458383, at *2–3 (Tex. App.—Fort Worth May 28, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that evidence supported conviction when appellant's excuse for not pulling over at the earliest possible moment was that he had "merely [driven] around the block and [had] pulled into his driveway so his car would not be towed"); *Robinson v. State*, Nos. 13-10-00064-CR, 13-10-00065-CR, 2011 WL 861152, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2011, pet. ref'd) (mem. op., not designated for publication) (rejecting argument that "[d]riving three blocks at a slow speed to her driveway after seeing emergency [lights] activated [could not] be considered 'intentionally fleeing' under the facts and circumstances in this case").

Appellant's effort to skirt that concession demonstrates that he is making a new argument on appeal. It, also, forces him to make arguments that cannot be sustained.

His argument transforms from, in essence, admitting that he was fleeing but had a subjective reason for doing so to one that the circumstances of his behavior allowed the jury to draw a reasonable inference that he was not fleeing or perhaps demonstrating an intent to flee. This theory turns on the premise that "[a] jury could believe that once [Appellant] noticed the pursuit, he stopped his vehicle at his home."

Again, we must look at the entire record to decide if it reasonably raises a scintilla of evidence that the defendant is guilty *only* of the lesser offense. *See Benefield v. State*, 389 S.W.3d 564, 574 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (stating that "[o]ur review of the record evidence to determine whether a defendant is entitled to a charge on a lesser-included offense considers whether there is more than a scintilla of evidence in support of the offense" and that "we do not consider the credibility of the evidence or whether it is controverted or in conflict. However, we will credit the defendant only with reasonable inferences that may be drawn from the evidence." (citations omitted)).

To argue that a reasonable jury could believe that Appellant did not know that he was being pursued by the police requires a complete suspension of disbelief. The only way that Appellant can spin the record to support the present theory is to draw unsupportable inferences or to ignore the portions of the record contrary to his portrayal:

- Appellant argues that the circuitous course he drove was close to his house. From this behavior Appellant concludes that "[i]t is less likely

21

[that he] intended to flee while using the vehicle since he never left the area around his home. This is especially more plausible considering [his] statements that he was trying to park his vehicle at home." What this argument never explains is how the jury could draw an inference that Appellant was simply trying to get home by taking a figure-eight route while driving in excess of the speed limit rather than driving straight there.

- If the explanation for the circuitous route is that he was trying to get home to park in a safe area, this claim does not offer an explanation for why he forewent immediately pulling over while traveling through blocks of traffic-less residential streets. Again, it was Appellant's choice to decide when he would comply, and his lack of immediate compliance established his culpability.

- Appellant argues that he slowed his vehicle as he ran four stop signs. In Appellant's view, "This indicates he did not intend to elude capture using a vehicle because he did not take more evasive actions." Certainly, Appellant could have driven more aggressively. But that does not mean that the aggressive behavior he did engage in fails to establish his intent to flee, i.e., the intent demonstrated by running four stop signs in the course of a couple of minutes. There is a self-apparent intent revealed

22

by those actions, and that intent lacks any explanation other than that he was fleeing.

- Appellant tries to avoid the fact that an officer saw him throwing something from the vehicle by claiming that the other officer said that he did not see any contraband thrown. This misstates the statements of the officer who was driving; he responded that it looked like objects were being thrown but that he could not tell, while the officer who was not driving specifically said that he had seen objects being thrown. The officer who had seen objects being thrown confirmed what he saw when he testified.

- Finally, Appellant argues that the jury could have believed that he did not have any contraband—and thus had no motive to flee—because one of the officers could not confirm conclusively that the leafy substance he saw on Appellant's person was marijuana. This slice of the record ignores Appellant's statement that he had "a little weed." Appellant's own words conclusively demonstrate a motive to flee.

The jury saw how Appellant's driving behavior immediately changed once the police announced their presence in a way that no person driving a vehicle at night could possibly miss, and this behavior remained consistent until he had accomplished his goal of getting his vehicle to his residence. The evidence does not reasonably raise

a scintilla of evidence that Appellant did not know he was being pursued when the bases for that contention are untenable.

**B.     There was no break in Appellant's flight that transformed his continuous course of conduct into two separate offenses.**

Appellant's final argument is that he did not commit a "continuous offense." Apparently, the purpose of this argument is to break the chain of events between his act of fleeing in his vehicle and his act of fleeing on foot and to suggest that he had committed two offenses—one fleeing using a vehicle and the other fleeing on foot. Appellant's specific argument is as follows:

> In this case[,] there was voluntary termination by [Appellant] and acts of compliance in response to the show of authority. This was not a continuous unbroken course of conduct. Once [Appellant] gave himself up[,] any possible evasion with the use of a vehicle had come to an end. Since the evidence indicates this was not a continuous offense, the trial court should have allowed an instruction on the lesser-included offense. [Citation omitted.]

Again, no rational jury could see the break in the sequence of events that Appellant posits. There was no break in the continuous chain of events; instead, Appellant used two means of locomotion to flee.

Appellant hardly "gave himself up" when he reached his residence. Instead, he stopped when faced with a police vehicle coming toward the front of his vehicle and apparently because he had coincidentally reached his residence. When he stopped, he exited his vehicle while confronted with several officers who had their guns drawn. He raised his hands for about eight seconds while he maneuvered himself to the front

24

of his vehicle. Once he was in a position where the vehicle provided a barricade to the officers' vision and any shots they might fire, he ran. If one accepts that Appellant was fleeing from the police in his vehicle, his acts once he stopped his vehicle demonstrate only a continued effort at evasion.

The authority that Appellant cites does not support his argument that the seconds while he tried to maneuver out of harm's way transformed his flight into two offenses. The cases Appellant cites address whether there might be such a long temporal break of hours or days that two offenses might be established. That theoretical argument has no application to the facts here.

Specifically, when the court of criminal appeals dealt with the question of whether a combined effort of fleeing using a vehicle and on foot constituted a continuing offense under Section 38.04 of the Penal Code, it addressed the argument that such a rule would create a continuing offense that could last for "days, weeks, months[,] or years." *See Hobbs*, 175 S.W.3d at 779–80. The court of criminal appeals did not resolve this argument but simply noted that under the facts of the case under review, police had not terminated their pursuit because they had temporarily suspended their pursuit when it became dark and had "resumed several hours later when it was feasible for the officers to effectively search for the appellant." *Id.* at 780. *Hobbs* and the cases citing it do not support the proposition that Appellant's eight seconds of feigned compliance while he maneuvered into a position to run transformed his flight into two separate offenses. As stated in *State v. Ojiaku,*

25

> The court [in *Hobbs*] expressly distinguished the case before it from the hypothetical situation described by the defendant where a "successful evader" could be charged with a criminal trespass for something he did "days, weeks, months or years later." Thus, even though the court in *Hobbs* concluded the defendant was committing a continuing offense, it did so because of the unique facts in the case. It did not pronounce evading arrest as always constituting a continuing offense, and it distinguished the defendant's continuing offense from a hypothetical situation where an offender could be viewed as continuously evading arrest for years.

424 S.W.3d 633, 638 (Tex. App.—Dallas 2013, pet. ref'd) (citations omitted).

Here, we are clearly dealing with one episode of evading. To argue that Appellant's efforts to maneuver to a position where he could run with a lessened risk of being shot and to get a head start on the race hardly creates an inference that he was operating under two different intents because there were two episodes of criminal conduct.

### C. Summary

We hold that Appellant failed to preserve his claim on appeal because the rationale he offered to the trial court for submitting an instruction on the lesser-included offense does not comport with his argument on appeal. Even if error were preserved, the evidence does not reasonably raise a scintilla of evidence to support the claim that he was guilty only of evading on foot. Finally, the flicker of feigned compliance by Appellant does not transform his effort to flee into two offenses. Accordingly, we overrule Appellant's sole issue.

## V.  Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 30, 2020