**Opinion issued October 29, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00062-CR

_____

**PAUL YONKO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1771842**

---

## O P I N I O N

A jury convicted appellant Paul Yonko of engaging in organized criminal activity, and after appellant pleaded true to one enhancement paragraph, assessed his punishment at twenty-eight years' confinement. On appeal, appellant raises four issues relating to: (1) his absence from the jury charge conference, (2) ineffective

assistance of counsel, (3) the court's failure to include one of his requested lesser-included offense instructions in the charge, and (4) whether aggregate theft is a predicate offense for purposes of the engaging-in-organized-criminal-activity statute. We affirm.

## Background

One January afternoon, appellant approached the complainant, James Fox, in a Kroger parking lot. Appellant was with two women, whom he identified as his daughters. Appellant pointed out a dent in Fox's vehicle and claimed he worked at an auto body repair shop and he could fix the dent for $150. Fox thought this was a good price and agreed to let appellant come to his home and perform the repairs.

When appellant arrived at Fox's home, he identified himself as Michael Gordon. Appellant had another man with him, who he introduced as Steve Hunter. Fox later learned from appellant that Hunter's real name was Sonny John. Over the course of several days, appellant and John worked on the dent. Even though they were unable to fully repair the dent, appellant asked Fox for $750. Fox paid appellant's price, and in Fox's mind, the two struck up a friendship.

Fox has been diagnosed with Asperger's syndrome, which puts him on the autism spectrum. Fox was valedictorian of his high school and obtained bachelor's and master's degrees in mathematics from Rice University. Fox worked for several oil companies as a computer programmer before retiring. While Asperger's does not

2

affect Fox's motor skills or his abilities to care for himself or learn, it does impact his ability to relate to other people. Fox does not have many close friends, does not enjoy social interactions, and describes himself as very introverted. Fox categorizes his ability to discern what other people are feeling or thinking as "very poor" as a result of Asperger's. Before meeting appellant, Fox was "extremely trusting." At the time of trial, Fox was 68 years old.

Fox and appellant began communicating regularly.[1] Initially, appellant asked Fox for $5,000 to help start an auto body repair shop. Fox gave appellant the money. Next, appellant told Fox his car had been repossessed and asked for $2,000 to buy another vehicle. Fox gave appellant the money, but according to appellant, he was scammed. Appellant claimed he paid the money for the vehicle but did not receive the vehicle. As a result, appellant asked Fox for $3,000 for another car. Fox again gave appellant the money, though he never saw the vehicle appellant supposedly purchased. According to Fox, he ultimately gave appellant money for three different vehicles. Appellant promised to pay Fox back. Appellant told Fox he had a job and that his brother "Larry" might help pay Fox back.

Sometime in January 2022, appellant asked Fox for money to bail his wife Monica out of jail. Fox posted her $500 bail. Next, appellant claimed he needed help

---

[1]     Between January and early April 2022, appellant and Fox called each other approximately 500 times.

with his rent and utilities. Fox gave him $5,000. Fox did not typically keep that kind of cash, so he had to withdraw money from his investment account. Before meeting appellant, Fox did not regularly withdraw money from his investment account.

Appellant also asked Fox to purchase gift cards for him. Appellant gave specific instructions as to the types of gift cards he wanted—Visa Vanilla gift cards, typically in $500 amounts. Fox would purchase most of these gift cards from CVS Pharmacy and give them directly to appellant. Appellant introduced other individuals to Fox: his "daughter," Savannah Bimbo; his wife, Monica Bimbo; and another woman named "Tina," who was later identified as Sue Ellen Stanley. Monica was typically with appellant when Fox gave him the money he requested.

Ultimately, from January to March 2022, the total withdrawn from Fox's investment account and spent for gift cards for appellant and his associates was $113,284.92.[2] Appellant promised Fox that he would pay him back. Appellant told Fox that he and his brother were the beneficiaries of a $2.4 million life insurance policy that they would split equally. Appellant promised Fox half of his half of the proceeds, or $600,000. Appellant also provided Fox with written promises to pay, using his alias, Michael Gordon, and a video recording of himself promising to pay Fox back. Appellant never fulfilled those promises.

---

[2]     Another figure presented to the jury was $119,621.67, representing the total amount of expenditures from Fox's Bank of America account.

4

Appellant also asked Fox to help his brother "Larry," who he claimed was in jail in Dallas. Fox gave him $20,000 for Larry but expected appellant to pay him back.

In March 2022, appellant asked Fox to take him to a dealership to buy a vehicle. Though Fox expected appellant to pick a used vehicle, appellant insisted on a new truck. Fox bought a 2022 GMC Sierra for appellant and financed the full purchase price of roughly $93,000. Though the truck was in Fox's name, he never drove it. Appellant had the keys and paperwork for the truck. Appellant promised Fox he would make the monthly payments. Within a week, Fox received a phone call from an auto storage facility, letting him know the truck was there and it had been wrecked.[3]

Shortly thereafter, Sonny John came to Fox's apartment and demanded that Fox buy him a truck, too. Again, Fox took out a loan for the purchase price of approximately $53,000. Fox felt threatened by John and purchased the truck because he was afraid of him. However, John promised Fox he would make the truck payments. Like appellant, John never made any payments on the vehicle.[4]

---

[3] Though there was no insurance on the truck, Fox did purchase Gap insurance, which covered some, but not all, of the loss. Ultimately, Fox's "regular insurance" paid off the loan, but the loan still impacted Fox's credit score and appeared on his credit report.

[4] Eventually, police called Fox (the record does not indicate why the police called Fox) and advised him that they had the truck he bought for John. When Fox got the

After the purchases of both trucks, appellant called Fox, letting him know he was in jail and needed money for the commissary and to make phone calls. Fox gave him the money as requested. Appellant also needed money for bail, claiming that he could not travel to New York to pick up his life insurance proceeds unless he was out of jail. Fox gave Savannah a total of $61,000, supposedly for appellant's bail. Fox gave her the money in $5,000 increments over a two-week period. "Tina," or Sue Ellen Stanley, typically accompanied Savannah to pick up the money. Appellant spoke with Fox almost every day while he was in jail and continued to assure Fox he would pay back all the money Fox had given to him and his family.

Eventually, the Harris County District Attorney's Office began to suspect appellant was involved in an ongoing crime and asked Detective Iovescu with the Houston Police Department's Swindle Squad to begin listening to appellant's jail calls. From those calls, Detective Iovescu identified Fox as appellant's target. Detective Iovescu met with Fox on April 7, 2022 and, from that meeting, he identified Sue Ellen Stanley, Savannah Bimbo, Monica Bimbo, and Sonny John as additional suspects.

In May 2022, a grand jury indicted appellant for engaging in organized criminal activity as part of a criminal combination with John, Monica, Savannah,

vehicle back, it had some damage and needed cleaning. He was later able to sell the vehicle at a loss.

6

and Stanley. The indictment alleged that from January 8, 2022 to April 7, 2022, the combination committed theft in an aggregate amount of at least $150,000 but less than $300,000 from Fox. At trial, the jury heard testimony from Fox and various investigators before finding appellant guilty as charged in the indictment.

At sentencing, appellant pleaded "true" to an enhancement paragraph concerning a prior felony conviction for theft from an elderly person, and the jury assessed his punishment at twenty-eight years' confinement and a $10,000 fine. The trial court signed a judgment in accordance with the jury's verdict on January 23, 2023, and this appeal followed.

### Appellant's Absence from Jury Charge Conference

In his first issue, appellant argues that the trial court committed reversible error by conducting a jury charge conference without appellant present. Appellant contends that this error violated his rights under the Sixth Amendment, the Texas Constitution, and article 33.03 of the Texas Code of Criminal Procedure, the last of which requires that a defendant be personally present at trial in all prosecutions for felonies. *See* TEX. CODE CRIM. PROC. art. 33.03. The record reveals the following concerning the proceedings:

(Open court, defendant not present, no jury)

THE COURT: Okay. So we are discussing . . . the proposed Court's jury charge . . . . [Defense counsel] has indicated that he's requesting two-lesser included offenses. And I will let him state for the record what those are and then we can discuss it.

7

[DEFENSE COUNSEL]: And, Your Honor, we reserve the right to make additional arguments at the formal charge conference.

THE COURT: This is the formal charge conference.

[DEFENSE COUNSEL]: Okay. We are requesting lesser-included offense of engaging in organized criminal activity --

THE COURT: And I'm sorry to interrupt you. Do you want your client out here for this?

[DEFENSE COUNSEL]: That probably wouldn't be a bad idea. And I've got his clothes.

THE COURT: Okay.

(Pause)

(Open court, defendant not present, no jury)

THE COURT: Okay. So your client is not here, Mr. [Defense Counsel], so why don't we just go forward with the charge conference. Of course he's not. We're not going to wait. He doesn't necessarily need to be here for that.

The trial court then proceeded with the charge conference. The record reflects that by the time the jury was brought back in the courtroom at the conclusion of the conference, appellant was present.[5]

Appellant first contends that his counsel's comment that appellant's presence "probably wouldn't be a bad idea" was sufficient to preserve error for our review. In the alternative, appellant argues that even if the error was not preserved, it is the type

---

[5]     The record does not indicate when appellant returned.

8

of harmful error that may be raised for the first time on appeal. The State argues that appellant failed to preserve error, but regardless, any error was not harmful.

## A. Standard of Review and Applicable Law

The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. AMEND. VI. The Confrontation Clause protects a defendant's right to physically face those witnesses who testify against him as well as his right to conduct cross-examination. *Scott v. State*, 555 S.W.3d 116, 125 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). The Court of Criminal Appeals has held that "within the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him, absent a waiver of that right through defendant's own conduct." *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985) (internal citations omitted) (quoting *Baltierra v. State*, 586 S.W.2d 553, 556 (Tex. Crim. App. 1979)); *see also* TEX. CODE CRIM. PROC. art. 33.03 (addressing defendant's right to be present).

Notwithstanding the foregoing, a trial court may proceed with trial to its conclusion when the defendant "voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury . . . ." TEX. CODE CRIM. PROC. art. 33.03; *see also Taylor v. U.S.*, 414 U.S. 17,

18–19 (1973) (per curiam). A defendant may waive his Sixth Amendment right to be physically present at trial to confront the witnesses against him if, after the jury has been selected with him in attendance, he voluntarily absents himself from the proceedings. *See Miller*, 692 S.W.2d at 90; *see also Taylor*, 414 U.S. at 18–20. We review a trial court's ruling that the defendant has voluntarily absented himself from trial under an abuse of discretion standard. *See Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984). The validity of a trial court's decision that the defendant's absence was voluntary will generally have to be determined in hindsight. *Id.* "Absent any evidence from the defendant to refute the trial court's determination that his absence was voluntary, we will not disturb the trial court's finding." *Id.*

Further, to preserve a complaint for appellate review, a defendant must make his complaint to the trial court by timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See* TEX. R. APP. P. 33.1(a). Confrontation Clause claims and a defendant's rights under article 33.03 are subject to this general preservation requirement. *See Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) (Confrontation Clause claims); *Routier v. State*, 112 S.W.3d 554, 575 (Tex. Crim. App. 2003) (rights under article 33.03).

**B.      Analysis**

It is undisputed here that appellant was present during voir dire, the presentation of evidence in the guilt/innocence phase, and the recitation of the jury's verdict after deliberation. Appellant was also present during the punishment proceedings. The record notes appellant's absence from the charge conference but does not suggest a reason for his absence. When the trial court indicated that it intended to proceed with the charge conference without appellant present, appellant's counsel did not object on any grounds, including the Confrontation Clause or article 33.03 of the Code of Criminal Procedure, nor did he argue that appellant's absence was possibly involuntary or ask for a continuance. Again, the record confirms that appellant was present in the courtroom by the time the jury returned following the charge conference. When appellant returned, he did not express any concern to the trial court about his absence during the charge conference. We hold that appellant has waived the issue because he failed to preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a); *Davis*, 313 S.W.3d at 347; *Routier*, 112 S.W.3d at 575.

Even if appellant had preserved his complaint for our review, we conclude that the trial court did not abuse its discretion in continuing with the charge conference. Appellant does not contest that he was present at both phases of trial as required by article 33.03. *See* TEX. CODE CRIM. PROC. art. 33.03 (stating court may

11

continue a trial to conclusion if defendant was present for jury selection and entering a plea to indictment). Appellant was only absent for a brief amount of time during the charge conference. *See Moore*, 670 S.W.2d at 261 (noting that when there is evidence that defendant's absence is voluntary, trial court may continue trial in defendant's absence).

And even if the trial court erred in conducting the charge conference in appellant's absence, it was not reversible error. Where the presence of a defendant does not bear a "reasonably substantial relationship to the opportunity to defend," no harm results from his absence from the proceedings against him. *Adanandus v. State*, 866 S.W.2d 210, 219 (Tex. Crim. App. 1993) (quoting *Cooper v. State*, 631 S.W.2d 508, 512 (Tex. Crim. App. 1982), *overruled on other grounds by Bell v. State*, 994 S.W.2d 173 (Tex. Crim. App. 1999)). To assess harm, we must address both harm under the rules of appellate procedure and whether the hearing bore a substantial relationship to appellant's opportunity to defend himself. TEX. R. APP. P. 44.2(a); *Adanandus*, 806 S.W.2d at 220.

The charge conference necessarily involved the discussion of questions of law. As the Court of Criminal Appeals has observed, "[i]t is difficult to imagine a trial fraught with complex legal problems when there will not be occasions where counsel and the court will confer on questions of law at the bench or in chambers outside the presence of the defendant." *Mares v. State*, 571 S.W.2d 303, 307 (Tex.

Crim. App. 1978). Appellant's arguments that he could have offered his opinions or input at the charge conference regarding his entitlement to the requested lesser-included offense instructions is without merit. Even if appellant had been present, the legal issues for the trial court to decide would not have changed, and we cannot conclude that the hearing bore a reasonably substantial relationship to appellant's opportunity to defend. *Id.* (holding defendant's presence at charge conference did not bear reasonably substantial relationship to opportunity to defend); *see also Salomechavez v. State*, No. 01-19-00782-CR, 2020 WL 6065530, at *6–7 (Tex. App.—Houston [1st Dist.] Oct. 15, 2020, pet. ref'd) (mem. op., not designated for publication) (holding same); TEX. R. APP. P. 44.2(a). Because there is no evidence that harm occurred, even assuming error in continuing with the charge conference in appellant's absence, the error does not constitute reversible error. *See Routier*, 112 S.W.3d at 577–79.

We overrule appellant's first issue.

## Ineffective Assistance of Counsel

In his second issue, appellant argues that counsel's failure to object to his absence from the jury charge conference constituted ineffective assistance of counsel. We disagree.

## A. Standard of Review and Applicable Law

The Sixth Amendments of the United States Constitution and the Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right to effective assistance of counsel requires objectively reasonable representation, not errorless performance. *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

To establish that trial counsel provided ineffective assistance, an appellant bears the burden to demonstrate by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142. An appellant must establish both prongs before an appellate court will find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

To satisfy the first prong, an appellant must show that his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Lopez*, 343 S.W.3d at 142.

14

Under the second prong, an appellant must demonstrate prejudice or "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Lopez*, 343 S.W.3d at 142. A reasonable probability is one sufficient to undermine confidence in the outcome. *Lopez*, 343 S.W.3d at 142.

For an appellate court to find that counsel was ineffective, "counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.* "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). Furthermore, a claim of ineffective assistance of counsel also requires proof of prejudice. *Bone v. State*, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002).

In most cases, the record on direct appeal is undeveloped regarding the motive behind counsel's actions and thus inadequate to prove a claim of ineffective assistance.[6] *See Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *James v. State*, 506 S.W.3d 560, 569 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("A

---

[6]    Claims of ineffective assistance of counsel rejected on direct appeal "due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal."). The Court of Criminal Appeals has repeatedly stated that trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When trial counsel is not provided an opportunity to explain his actions, we will not find that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

## B. Analysis

We have already determined any error in conducting the charge conference outside of appellant's presence did not rise to the level of reversible error. When the trial court would not have erred in overruling an objection, there can be no ineffective assistance for counsel's failure to assert it. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996); *see also Harper v. State*, No. 05-95-00953-CR, 1997 WL 446246, at *6 (Tex. App.—Dallas June 30, 1997, no pet.) (mem. op., not designated for publication) (holding no ineffective assistance of counsel for failing to object to proceedings conducted outside of appellant's presence after determining no error in removing appellant from courtroom, citing *Vaughn*). Thus, counsel's failure to object to the trial court's decision to proceed with the charge conference

16

despite appellant's absence did not rise to the level of ineffective assistance. *See Strickland*, 466 U.S. at 687–88. We overrule appellant's second issue.

## Lesser-Included Offense Instruction

In his third issue, appellant contends that the trial court erred in failing to instruct the jury on the lesser-included offense of engaging in organized criminal activity with an underlying offense of aggregate theft of at least $30,000 but less than $150,000. Appellant argues that based on the testimony at trial, the jury could have determined that the two vehicles Fox purchased were not stolen and excluded those amounts from the aggregate theft total.[7]

## A.     Standard of Review and Applicable Law

We review a trial court's refusal to submit a lesser-included offense instruction to the jury for an abuse of discretion. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023) (citing *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004)). We employ a two-prong test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *Id.* (citing *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)). We first compare the statutory elements of the alleged lesser offense with the elements of the greater offense and any descriptive averments in the indictment. *Id.* (citing *Safian v. State*, 543 S.W.3d

---

[7]     As the trial court pointed out, appellant needed to exclude both trucks to get below the $150,000 threshold. If the jury only excluded the truck purchased for Sonny John, the total theft amount still exceeded $150,000.

17

216, 220 (Tex. Crim. App. 2018)). If the lesser offense is included within the proof necessary to establish the offense charged, the first step is satisfied. *Id.* (citing *Safian*, 543 S.W.3d at 220; TEX. CODE CRIM. PROC. art. 37.09(1)).

Next, we evaluate the evidence to determine whether there is some evidence that would permit a rational jury to acquit the defendant of the greater, charged offense, while convicting him of the lesser-included offense. *Id.* (citing *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006)). Though we evaluate all evidence admitted at trial, the evidence must be directly connected to the lesser-included offense and present it as a valid, rational alternative to the greater offense. *Id.* at 776–77 (citing *Goad v. State*, 354 S.W.3d 443, 448, 446 (Tex. Crim. App. 2011)).

## B. Analysis

One way an offense can constitute a lesser-included offense of another is for it to differ from the charged offense in degree of harm only. *See* TEX. CODE CRIM. PROC. art. 37.09; *see also Reuter v. State*, No. 01-04-00936-CR, 2006 WL 348146, at *13 (Tex. App.—Houston [1st Dist.] Feb. 16, 2006, no pet.) (mem. op., not designated for publication). Here, appellant was charged with engaging in organized criminal activity with a predicate offense of aggregate theft of more than $150,000

but less than $300,000—a second-degree felony.[8] TEX. PENAL CODE §§ 31.03(e)(6)(A); 31.09. Theft is a third-degree felony offense if the aggregate value of the property is greater than $30,000 but less than $150,000. *Id.* § 31.03(e)(5). Appellant sought an instruction on engaging in organized criminal activity with a predicate offense of theft in the third degree. The offense requested differs from second-degree theft only in the degree of harm and was thus capable of being included as a lesser-included offense. *See* TEX. CODE CRIM. PROC. art. 37.09; *see also Reuter*, 2006 WL at *13 (discussing second-degree theft as lesser-included offense of first-degree theft under prior version of statute).

Next, we consider whether there was some evidence showing that appellant is guilty only of the lesser-included offense. Appellant never admitted to theft totaling $30,000 but less than $150,000, and there is no other evidence in the record to support such a finding. On appeal, appellant essentially argues that the jury could have believed the State's evidence demonstrating thefts of the cash and gift cards but disbelieved the evidence demonstrating that the trucks were stolen. However, it "is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-

---

[8]  While an aggregate theft of at least $150,000 but less than $300,000 is a second-degree felony, engaging in organized criminal activity with a predicate offense of aggregate theft of $150,000 to $300,000 is elevated to a first-degree felony. *Compare* TEX. PENAL CODE §§ 31.03(e)(6)(A) and 31.09 *with* § 71.02(b).

included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), *cert. denied*, 523 U.S. 1079 (1998)). "Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

Here, the fact that the jury might have disbelieved that the vehicle purchases in the amounts of approximately $93,000 and $53,000 constituted thefts is not *affirmative evidence* that the total thefts amounted to greater than $30,000 but less than $150,000. *See Rousseau*, 855 S.W.2d at 675 (holding that appellant was not entitled to charge on lesser-included offense when no evidence was presented that if appellant was guilty, he was only guilty of lesser-included offense); *see also Benefield v. State*, 389 S.W.3d 564, 576 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (rejecting similar argument in holding that no evidence in record permitted jury to rationally find that if appellant was guilty, she was guilty only of lesser-included offense of misdemeanor misapplication of fiduciary property valued at less than $1,500); *Amberson v. State*, No. 02-17-00298-CR, 2018 WL 5993281, at *2 (Tex. App.—Fort Worth Nov. 15, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that fact that jury might have disbelieved or believed

20

certain testimony about cost of repairs did not entitle defendant to lesser-included offense instruction of criminal mischief of $750 or more but less than $2,500 where no affirmative evidence would allow factfinder to find that if appellant was guilty, he was only guilty of lesser-included offense).

We overrule appellant's third issue.

**Aggregate Theft as a Predicate Offense**

In his fourth issue, appellant argues that the evidence is legally insufficient to support his conviction for engaging in organized criminal activity, namely, aggregate theft of more than $150,000 but less than $300,000, because "aggregate theft" is not one of the specifically enumerated predicate offenses for purposes of the engaging-in-organized-criminal-activity statute. The State responds that theft is one of the listed predicate offenses, and aggregate theft is not distinct from theft for purposes of the engaging statute.

Although appellant presents this point as one involving the sufficiency of the evidence, appellant's argument is actually that the *indictment* is insufficient to allege engaging in organized criminal activity under section 71.02 of the Texas Penal Code because it fails to properly allege one of the enumerated predicate offenses. Appellant does not claim that the evidence is insufficient to prove either the existence of a criminal combination that planned to engage in criminal activities or

21

the commission of aggregate theft of greater than $150,000 but less than $300,000.[9]

*See Walker v. State*, 594 S.W.3d 330, 336 (Tex. Crim. App. 2020) (noting State's burden in engaging-in-organized-criminal-activity case to prove both existence of criminal combination that planned to engage in criminal activity and actual commission of at least one listed predicate offense).

## A. Waiver

As a threshold matter, we note that appellant failed to present to the trial court a motion to quash the indictment or otherwise object to any alleged defect, error, or irregularity of form or substance in the indictment before the date that the trial on the merits commenced. Thus, he waived his right to complain about the purported defect in the indictment on appeal. *See* TEX. CODE CRIM. PROC. art. 1.14(b); *Jenkins v. State*, 592 S.W.3d 894, 902 (Tex. Crim. App. 2018); *Duron v. State*, 915 S.W.2d 920, 921–22 (Tex. App.—Houston [1st Dist.] 1995) (defendant waived complaint on appeal that indictment "did not allege an offense" because defendant did not object before trial began), *aff'd*, 956 S.W.2d 547 (Tex. Crim. App. 1997); *see also Williams v. State*, 356 S.W.3d 508, 519 (Tex. App.—Texarkana 2011, pet. ref'd)

---

[9] To the contrary, in arguing that we should reform the judgment to reflect a conviction for aggregate theft of greater than $150,000 but less than $300,000, appellant argues, in great detail, that the evidence was legally sufficient to support such a conviction.

(defendant did not preserve argument that indictment did not allege essential elements of offense, where defendant failed to object before trial).

Based on the foregoing, we hold that appellant did not preserve for appellate review his complaint about the indictment raised in his fourth issue.

## B. Aggregate Theft as a Separate Offense Under Section 31.09

Even if appellant did preserve his arguments concerning the indictment, we nevertheless reject his contentions. The State charged appellant with engaging in organized criminal activity based upon the commission of the predicate offense of "aggregate theft." Section 71.02 (herein, the engaging statute) outlines numerous predicate offenses, including: murder, capital murder, arson, aggravated robbery, robbery, burglary, and *theft*, among others. *See* TEX. PENAL CODE § 71.02(a). Appellant argues that "aggregate theft" is a wholly separate offense from theft, relying on *Graves v. State*, 795 S.W.2d 185 (Tex. Crim. App. 1990). We agree with the State that appellant's reliance on *Graves* is misplaced, as explained below.

*Graves* concerned a statute of limitation issue. The defendant had been indicted for felony theft in accordance with the aggregate theft statute, section 31.09 of the Texas Penal Code. *Id.* at 186. That provision, titled "Aggregation of Amounts Involved in Theft," states as follows: "When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the

23

amounts aggregated in determining the grade of the offense." TEX. PENAL CODE § 31.09.

In *Graves*, the underlying offenses involved eighteen separate counts of misdemeanor theft, aggregated into one count of felony theft. 795 S.W.2d at 186. However, the felony theft indictment was returned two years and two days after the last theft occurred, in violation of the two-year statute of limitation applicable to misdemeanor theft. *Id.* As a result, the trial court dismissed the indictment. *Id.* On appeal to this court, the State argued that the appropriate statute of limitation was the five-year statute applicable to felony offenses. We agreed and reversed the trial court's dismissal of the indictment. *Id.*; *see also State v. Graves*, 775 S.W.2d 32, 33 (Tex. App.—Houston [1st Dist.] 1989).

The Court of Criminal Appeals granted the defendant's petition for discretionary review specifically to consider whether this Court erred "in holding that Section 31.09 creates a felony offense for purposes of the statute of limitation" and then affirmed this Court's decision. *Graves*, 795 S.W.2d at 186.

Appellant focuses on the following language from the *Graves* decision:

Although theft under Section 31.09 consists of two or more incidents of theft, the statute makes them one offense. *Brown v. State*, 640 S.W.2d 275, 278 (Tex. Crim. App. 1982). This notion is buttressed by the fact that there is no vehicle by which a defendant can compel a severance of the underlying offenses. *Wages v. State*, 573 S.W.2d 804, 806 (Tex. Crim. App. 1978). Accordingly, we hold that Section 31.09 adequately creates a separate offense and defines conduct for purposes of jurisdiction, punishment and period of limitation from prosecution.

24

*Id.* at 187. Appellant prefers to ignore the qualifying language in the final sentence of the above language: "for purposes of jurisdiction, punishment and period of limitation from prosecution." *See id.* Appellant essentially asks us to note the language "hold[ing] that Section 31.09 adequately creates a separate offense" and read no further. That we cannot do.

The focus of the *Graves* decision was the effect of the aggregation provision on the applicable statute of limitation, specifically, which statute of limitation should apply when value amounts are aggregated to raise the offense to a more serious one. The *Graves* court did not address the issue now raised by appellant.

As the State points out, Section 31.09 is one of numerous sections included in Chapter 7 of the Penal Code, titled "Theft." Further, Section 31.09 references the chapter as a whole in explaining aggregation, "inextricably linking" the two provisions, as the State argues. *See* TEX. PENAL CODE § 31.09 ("When amounts are obtained *in violation of this chapter* . . .") (emphasis added). One cannot identify the necessary actus reus or mens rea under section 31.09 without turning to section 31.03 defining theft. *See* TEX. PENAL CODE § 1.07(a)(22) (defining "element of offense" as the forbidden conduct, required culpability, required result, or negation of any exception to the offense); *see also King v. State*, 17 S.W.3d 7, 13 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd) (noting that "essential elements" of aggregate theft are found in section 31.03(a)). Additionally, as the State notes, Section 31.09

25

applies to other theft offenses not at issue here, including Theft of Service, Organized Retail Theft, Cargo Theft, Theft of Petroleum Product, and Mail Theft, among others. *See* TEX. PENAL CODE §§ 31.04, 31.16, 31.18, 31.19, 31.20. All of this demonstrates the interrelated nature of Section 31.09 to Chapter 31 as a whole.

Though no reported cases have addressed this issue, at least one unreported case from the Amarillo Court of Appeals supports the State's construction of the applicable statutes. In *In re Posey*, No. 07-10-00467-CR, 2010 WL 4904489 (Tex. App.—Amarillo Dec. 2, 2010, orig. proceeding) (mem. op., not designated for publication), the relator challenged his conviction for engaging in organized criminal activity, with a predicate offense of theft of property with an aggregate value of over $100,000 but less than $200,000. 2010 WL 4904489, at *1. Relator argued that the engaging statute contained no language authorizing aggregation of amounts for determining the punishment grade of the underlying offense of theft and that when multiple acts of theft were alleged, the offense classification should be determined by the theft with the greatest property value. *Id.* at *2. Rejecting relator's "strained reading" of the engaging statute, the court focused on the statute's plain meaning and concluded that: (1) the grade of theft may be determined by aggregation, (2) theft is an underlying offense for purposes of the engaging statute, and (3) the grade of the offense of engaging in organized criminal activity is determined by the grade of theft committed subject to the application of the engaging statute. *Id.* (citing TEX.

PENAL CODE § 71.02(b)). The court also noted that "a person may be charged with engaging in organized criminal activity and the underlying offense and punished for both" in the same proceeding, further demonstrating the fallacy of relator's argument. *Id.* at n.10 (citing *Garza v. State*, 213 S.W.3d 338, 352 (Tex. Crim. App. 2007) (explaining TEX. PENAL CODE § 71.03(3))).

We agree with the *Posey* court that a plain reading of the engaging statute supports a conclusion that thefts may be aggregated to enhance the grade of the offense. Considering the engaging statute's language, that provision states that "[a] person commits an offense if . . . the person commits or conspires to commit *one or more of the following*: . . . theft." It follows that if a person commits "one or more" thefts while engaging in organized criminal activity, then Chapter 31's aggregation provision should be read in connection with the engaging statute to permit stacking of those theft totals to reach a higher dollar amount, as would be permissible if the defendant committed multiple thefts but did not engage in organized criminal activity in the commission of those thefts.

Ultimately, we conclude that section 31.09's aggregate theft provision is not a separate offense from "theft" for purposes of the engaging statute. We therefore reject appellant's challenge to the indictment (couched as a legal sufficiency

27

argument) for that reason.[10] As appellant does not present any other sufficiency arguments for our consideration, we overrule his fourth issue.

## Conclusion

Having overruled each of appellant's issues, we affirm. We deny any pending motions as moot.

Amparo Monique Guerra
Justice

Panel consists of Chief Justice Adams and Justices Goodman and Guerra.

Publish. TEX. R. APP. P. 47.2(b).

---

[10] Because we reject appellant's legal sufficiency argument, we do not reach his sub-argument urging us to reform the judgment to reflect a conviction for aggregate theft of $150,000 to $300,000 and to remand the case for a new punishment hearing.